BETHUNE PLAZA, INC., Plaintiff-Appellant, *v.* THE DEPARTMENT OF PUBLIC AID, Defendant-Appellee.

First District (4th Division)    No. 79-2088

Opinion filed November 26, 1980.

Malcolm A. Chandler, of Chicago (Stanley L. Hill, Wenona Y. Whitfield, and Burditt & Calkins, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Ellen P. Brewin, Special Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The State of Illinois Department of Public Aid (Department) found the appellant Bethune Plaza, Inc. (Bethune), a nursing home, guilty of receiving kickbacks from Sutcliffe Pharmacy. The only evidence introduced at the hearing was certain records and checks of Sutcliffe and testimony that Bethune refused to produce the invoices as to Sutcliffe or explain the checks. Bethune's officers refused to answer questions, taking the fifth amendment. The trial court affirmed. We reverse, holding the evidence was insufficient to support the agency determination.

On August 11, 1978, the Illinois Department of Public Aid sent Bethune, an intermediate care facility receiving public funds under the Medical Assistance Program (Ill. Rev. Stat. 1975, ch. 23, par. 5—1 *et seq.*), a notice of intent to terminate and a right of hearing. In the notice, the Department charged Bethune with having received kickbacks from Sutcliffe Pharmacy Corporation and Sutcliffe Pharmacy Incorporated (both hereinafter referred to as Sutcliffe). After receipt of the notice to

terminate, Bethune requested a hearing concerning the proposed termination.

At the hearing the Department called two of its employees or former employees, Vicki Pedersen and Paul Rodgers, as witnesses, and Rosa and Jerome Morgan as adverse witnesses. Vicki Pedersen testified that she was an accountant for the Department of Public Aid for approximately three years and that for the majority of that time conducted audits of nursing homes. Pedersen participated in the December 27, 1976, exit interview of Bethune as an observer, assisting her supervisor, Stephanie Austin, by taking notes.

The purpose of an exit interview is to discuss with the facility the audit findings and any possible discrepancies and to explain to them what the report will contain. This exit interview was conducted subsequent to the Bethune audit and concerned matters which surfaced as a result of the Bethune and Sutcliffe audits. Pedersen acknowledged that since she had not been present at the audit, she had no personal knowledge of the audit findings nor what documents or invoices were examined by the auditors. Upon questioning by Bethune's attorney, however, she did read a statement from the auditor's report that "both Mrs. Morgan and Mr. Williams refused to answer any questions concerning Sutcliffe Pharmacy nor would they allow examination of invoices from that pharmacy."

Austin, an I.D.P.A. auditor, conducted the exit interview. Rosa Morgan, Bethune's administrator, Edward Williams, Bethune's attorney, Pedersen, and a court reporter were present. (Initially, counsel for Bethune indicated he wanted to offer the court reporter's transcript into evidence, but the record does not indicate that was ever done.) They discussed trust funds and financial records. According to Pedersen, Morgan and Williams were not cooperative. Austin requested the production of the invoices of various providers including those of Sutcliffe. Bethune did not produce the Sutcliffe invoices and refused even to answer questions concerning Sutcliffe. Copies of the Sutcliffe checks were shown to Rosa Morgan and Williams, who were asked what they represented, but Williams did not even want to address them. In refusing to answer questions, they claimed that it was not within the scope of the audit and that it was an illegal operation to ask for certain records.

The Department's second witness, Paul Rodgers, had been auditor for the Department for four years. He spent about two years and three months in the pharmacy audit unit. When doing an audit he examined prescription files, purchases, invoices, and the accounting and financial records. He conducted an audit of Sutcliffe which was completed in September 1976. During the audit he was specifically looking for evidence of violations of departmental policy. He looked at cancelled checks, check stubs, deposit records, cash reconciliations and financial

statements. Sutcliffe did not print a general ledger but kept it on a computer. They prepared the financial statement from that computerized data. They also did not have a general journal or a cash disbursement record as such. He discovered six cancelled checks made payable to Bethune. The related check stubs indicated that the expenditure was for factoring and billing; the financial statements also indicated the payments had been posted to factoring and billing. Mr. Rodgers described the six checks, copies of which were introduced into evidence. Each of the six checks were signed by Jack Page, president of Sutcliffe. Four of these checks show the names "Bethune Plaza" and "Rosa N. Morgan," on the back side of the checks in the place where endorsements are generally made. The remaining two checks show the names, "Bethune Plaza" and "Jerome E. Morgan," also on the back side of the checks in the area commonly used for endorsements.

The deposit stamp on the back of three of these checks reads "Pay to the Order of Hyde Park Bank and Trust Company for Deposit Only, 53rd Street Mr. 'G', Inc." According to Mr. Rodgers' testimony, Mr. G. Inc. is a grocery-liquor store in Hyde Park. The deposit stamp on the back of the fourth check reads "Deposit paid to the Order of Aetna State Bank, Chicago, Illinois, Sutcliffe Pharmacy, Incorporated." The deposit stamp on the fifth check reads "Pay to Order of First National Bank in Dolton For Deposit Only Sutclif Pharmacy Corporation, Incorporated." And on the sixth check "Pay to Order of [unclear] For Deposit Only Sutcliffe Pharmacy, Incorporated."

The checks were then compared against Sutcliffe's check register and monthly operating schedules, copies of certain entries being introduced into evidence over the objection of Bethune that no foundation had been laid for their admission as business records. Rodgers also testified as to the entries and his findings. With reference to the fourth check which was dated September 22, 1975, he stated that he found the corresponding check register maintained by Sutcliffe which lists a payment of $2148 (the amount on that check) by Sutcliffe to Bethune as a "Billing and Factoring Fee." The unaudited operating income and expense schedule for the period ending September 30, 1975, also had an entry of "Factoring and Billing" in the amount of $2148. The September 1975 cash summary of disbursements and receipts prepared by Sutcliffe's accountant lists an item under Miscellaneous as "Bethune Note Rec." in the amount of $2148.

With reference to the sixth check dated December 8, 1975, in the amount of $908.62, Rodgers testified that the corresponding check stub reflected payment by Sutcliffe to Bethune for a billing and factoring fee. The December 1975 cash summary of disbursements and receipts prepared by the Sutcliffe accountant shows an entry under miscellaneous as

"Loan Repayments" in the amount of $908.62. The receipts column of that same summary lists receipts from an unidentified nursing home in the amount of $3,497.47, county welfare $5,032.07, and welfare $46,853.70. The unaudited computer-printed schedule for Sutcliffe operating expenses for the period ending December 31, 1975, contains an entry for factoring and billing in the amount of $1,183.63. There was no entry on that schedule in the amount of $908.62.

Rodgers testified that during the two-year period he had conducted 20 to 25 audits and had developed some expertise in examining documents. This claim of expertise was not challenged by Bethune. He testified that he had never seen factoring as an expense account. He had seen billing as an expense.

Rosa and Jerome Morgan were called by the Department as adverse witnesses. Rosa Morgan testified that she was the administrator of Bethune, an intermediate nursing care facility. She also admitted that as administrator of the home she had received vouchers made out to Bethune Plaza from the Illinois Department of Public Aid. Pleading the fifth amendment she refused to answer such questions as whether she knew Jack Page, whether she had ever purchased drugs from Jack Page or Sutcliffe, whether the endorsement of Rosa Morgan on the back of certain checks introduced into evidence was hers, whether between January 27, 1974, and December 8, 1975, she was aware of Mr. G's, and whether she cashed at Mr. G's a check dated December 10, 1974, made out to Bethune by Sutcliffe.

Jerome Morgan testified that he was the assistant administrator of the nursing home. Invoking the fifth amendment, he refused to state if he was associated with Bethune between October 1, 1974, and June 17, 1975, whether he knew Jack Page, whether he was familiar with Sutcliffe Pharmacy Corporation or Sutcliffe Pharmacy, Inc., whether he had ever received a check from either one, whether as assistant administrator he had ever contracted to purchase medical supplies from Jack Page, whether the handwriting on the back of certain checks was his, what banks Bethune had its accounts in during the period October 1, 1974, to December 8, 1975, whether as assistant administrator he had ever received any money from Jack Page, whether he was aware of Mr. G's, and whether he had cashed any checks there.

The hearing examiner in his report concluded that the Department had established its case by a preponderance of the evidence and recommended termination of Bethune's eligibility. His reasoning can be summarized as follows: The account was not actually for "billing and factoring," a category which the examiner found to be vague and not readily explainable and which he also discounted by stating "[a] pharmacy is not a factor." However, the payments from Sutcliffe to Bethune

were for return consideration from Bethune as the Sutcliffe accounts contained no entry for "gifts expense." Bethune and Sutcliffe were thus found by the examiner to be engaged in financial transactions, whereby money was paid to Bethune by Sutcliffe for some unknown and hidden return consideration. Because they both were providers in the Medical Assistance Program during the audit period and would stand to gain mutual advantage by entering into a kickback or rebate relationship, the examiner concluded that the Department had established a prima facie case that this was the nature of the transactions.

Bethune received this report on February 26, 1979. Under the Rules of the Department, it had 10 days to file its exceptions. At 5 p.m. on March 7, 1979, it mailed its exceptions in Chicago to the Department in Springfield. Needless to say the exceptions were not received by the Department until March 9, 1979. On March 8, 1979, the Director adopted the examiner's report and made his administrative decision to terminate.

In its exceptions Bethune contended that (1) the conclusion reached by the hearing officer was clearly against the preponderance of the evidence; (2) the decision was based upon evidence not in the record but of which the examiner improperly took official notice since he had not given prior notice of his intention to do so.

Bethune, having lost before the Department, filed a complaint in the trial court for administrative review alleging that the decision was erroneous, void and not in accordance with the law because (1) the decision was unsupported by a preponderance of the evidence; (2) the decision was based upon material not found in the evidence and not officially noticed in accordance with Department rules; (3) the allegations were vague and void on their face; (4) the Director's decision was not in the form prescribed by the Department rules; (5) the decision was rendered in complete disregard of the rules allowing counsel to file written exceptions within 10 days of the receipt of the hearing officer's receipts. These contentions, except the third, were repeated in Bethune's brief filed in the trial court. The brief added no new contentions. After considering the briefs and arguments of counsel the trial court affirmed. Bethune then filed a motion for a new trial contending (1) there was no evidence presented before or during the hearing whereby the hearing officer and subsequently the Director could conclude by a preponderance of the evidence that Bethune was guilty; (2) that official notice was improperly taken; (3) that an opportunity must be afforded to file exceptions; (4) that the Director is required to make a final decision in writing which includes findings of fact and conclusions of law separately stated; (5) that the Director was biased against Bethune, thus denying Bethune due process.

When Bethune filed its complaint in the trial court, it also filed a motion for stay of the decision. In its motion, it alleged that over 98% of

Bethune's nursing home patients receive care from Bethune by reimbursement to Bethune from the State of Illinois Department of Public Aid through the Medical Assistance Program. This motion was denied. After the trial court affirmed the decision, it ordered the Department to continue making payments to Bethune for services rendered to eligible residents thereof admitted prior to August 11, 1976 (the Department had been doing so up to that date), for a period of six months pending appeal. This stay was later extended by this court.

On appeal, Bethune has raised several issues for our consideration, but in light of our conclusion, we need consider only one: whether the agency determination was supported by the evidence.

■■ Bethune was charged with having violated 42 U.S.C. §1396h(b)(1) (1975 Supp.), which at that time read, in relevant part:

> "(b) Whoever furnishes items or services to an individual for which payment is or may be made in whole or in part out of Federal funds under a State plan * * * and who solicits * * * or receives any—
>
>> (1) kickback or bribe in connection with the furnishing of such items or services or the making or receipt of such payment * * * shall be guilty of a misdemeanor * * *."

Accordingly, under the statute the Department was required to establish that Bethune provided items or services for which payment was to be made in whole or in part out of Federal funds under a State Medicaid plan and that Bethune solicited or received from Sutcliffe a kickback or bribe in connection with the furnishing of the services or items.[1]

It is clear that Bethune furnished items or services for which payment was or could be made in whole or in part out of Federal funds under a State plan. Rosa Morgan admitted receipt of such funds at the hearing, and Bethune in its motion filed in the trial court stated that 98% of its patients were Medicare-Medicaid patients. Accordingly, the issue is whether the evidence shows that (1) Bethune received kickbacks from Sutcliffe and (2) these kickbacks were in connection with the items or services for which payment was made in whole or in part out of Federal funds.

■■ It is also irrefutably established that Sutcliffe made out checks which Bethune endorsed. Bethune's endorsements are on the back of the six

---

[1] Bethune contends the Department was required to prove that the kickback was made out of Federal funds. The statute does not so require (*United States v. Ruttenberg* (7th Cir. 1980), 625 F.2d 173), nor does it require that the funds be returned to an earlier possessor. (*United States v. Hancock* (7th Cir. 1979), 604 F.2d 999, *cert. denied* (1979), 444 U.S. 991, 62 L. Ed. 2d 420, 100 S. Ct. 521.) A payment of a kickback to one in control of Federal funds, that is one in a position to open up or control a source of income, is all that is required. *United States v. Ruttenberg* (7th Cir. 1980), 625 F.2d 173; *United States v. Hancock* (7th Cir. 1979), 604 F.2d 999, *cert. denied* (1979), 444 U.S. 991, 62 L. Ed. 2d 420, 100 S. Ct. 521.

checks introduced into evidence. These endorsements are presumed to be genuine and authorized (Ill. Rev. Stat. 1975, ch. 26, par. 3—307(1)(a)), and since there was absolutely no evidence to show that the signatures were forged, the presumption required a finding for the Department on this issue. Uniform Commercial Code Comment 1, Ill. Ann. Stat., ch. 26, par. 3—307 (Smith-Hurd 1975).

The Department argues that there is a presumption that the endorsements were for value. The cases cited by the Department for this proposition all involve the makers of notes and checks. Even if we assume, however, that this presumption extends to the endorsers of checks, at least under the facts of this case, it does not necessarily follow that the checks were for kickbacks.

■■ The hearing examiner concluded that the evidence established the existence of kickbacks because it was reasonable to conclude that the "billing and factoring" account of Sutcliffe's records was being used to hide the real nature of the transactions between Sutcliffe and Bethune and since the consideration flowing from Bethune to Sutcliffe was not posted to a recognizable account, it could be concluded it was not a legitimate consideration. While a case may be established by circumstantial evidence, it must be shown that the facts are of such a nature and are so related as to make it the only conclusion that could reasonably be drawn, and where circumstantial evidence is used to establish a material fact, the proof must be based on something more than mere guess, conjecture or surmise. (*Champion v. Knasiak* (1974), 25 Ill. App. 3d 192, 323 N.E.2d 62; 18 Ill. L. & Prac. *Evidence* §342 (1956).) The examiner's conclusions here are based on no more than conjecture that an unexplained account by a third person, Sutcliffe, merely because it was unexplained must be illicit.[2]

■■ The Department contends that Bethune's failure to explain the checks when confronted with them acts as an admission against interest. (Compare *Breslin v. Bates* (1973), 14 Ill. App. 3d 941, 303 N.E.2d 807; *Casey v. Burns* (1955), 7 Ill. App. 2d 316, 129 N.E.2d 440.) While Bethune's silence may have acted as an admission that Bethune received and endorsed the checks and perhaps even that Bethune received consideration for the endorsement, this still, as stated earlier, does not establish that Bethune received kickbacks. The Department further argues that Bethune's failure at the hearing to produce evidence gave rise to a presumption that the evidence withheld was adverse to Bethune. (See, for example, *Berlinger's, Inc. v. Beef's Finest, Inc.* (1978), 57 Ill.

[2] Bethune has also contended that the introduction of both the checks and the accounts was error since no foundation was laid. This objection was clearly waived by Bethune's failure to properly raise it in the trial court. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.

App. 3d 319, 372 N.E.2d 1043; *Dollison v. Chicago, Rock Island & Pacific R.R. Co.* (1976), 42 Ill. App. 3d 267, 355 N.E.2d 588; *In re Estate of Liebling* (1970), 118 Ill. App. 2d 460, 254 N.E.2d 531, *appeal denied sub nom. Gardner v. Liebling* (1970), 43 Ill. 2d 397; *Bassi v. Morgan* (1965), 60 Ill. App. 2d 1, 208 N.E.2d 341, *appeal denied* (1965), 32 Ill. 2d 625; *Page v. Keeves* (1935), 362 Ill. 64, 199 N.E. 131.) This presumption does not, however, relieve the plaintiff from the burden of establishing a prima facie case (*Dollison v. Chicago, Rock Island & Pacific R.R. Co.* (1976), 42 Ill. App. 3d 267, 355 N.E.2d 588), and the Department, which failed to produce any evidence showing that any money received by Bethune from Sutcliffe was in return for Bethune's channeling to it business in connection with Medicare-Medicaid patients, failed to do so here.

Accordingly, the judgment of the trial court affirming the Department's order is reversed.

Reversed.

LINN, P. J., and JOHNSON, J., concur.