(No. 77-CC-2478—)

Madison-Kedzie, Inc., Claimant, *v.* The State of Illinois, Respondent.

*Opinion filed December 31, 1986.*

Lisco & Field, for Claimant.

Neil F. Hartigan, Attorney General (James A. Koch, Assistant Attorney General, of counsel), for Respondent.

Poch, J.

The Claimant, Madison-Kedzie, Inc., seeks an award of $63,370.45 in payments claimed to be due from the Illinois Department of Public Aid for vendor payments due for services rendered to or on behalf of welfare recipients.

This claim was presented to a commissioner of this Court for the taking of evidence. The Claimant alleges that the Respondent did not have the authority to terminate the Claimant as a vendor under the Medical Assistance Program and that the Respondent did not prove the Claimant was guilty of fraud and, therefore, the Claimant is entitled to the full amount requested. The Respondent argues that the Claimant should be paid for services only until the date of its termination from the program and that in the alternative that the claim should be denied in its entirety due to Claimant's fraudulent conduct in providing claimed services to welfare recipients.

The evidence is summarized as follows: The Claimant seeks an award of damages for the nonpayment of 7687 prescriptions provided to welfare recipients who were receiving public assistance from the Illinois Department of Public Aid (IDPA), an agency of the Respondent. During 1975 the IDPA conducted an audit of the Claimant's pharmacy business, which for the most part provided services to public aid recipients. The IDPA decided to terminate the Claimant as a provider and advised the Claimant that it would be terminated effective February 27, 1976. The Claimant appealed this decision which was ultimately upheld by the Director of the IDPA on February 25, 1977. Thereafter, the Claimant filed this claim in this court.

Hiram Anderson, a co-owner of the Claimant's pharmacy business testified that the Claimant submitted

duplicates of prescriptions filled by the pharmacy which was the only documentation required by IDPA in 1976. Anderson testified that the Claimant was not paid $20,252.00 for prescriptions filled between February 11, 1976, and February 27, 1976. The remaining amount claimed results in the prescription fees from February 27, 1976, until July 1976 while the termination was in the internal appeal process. The Respondent's witness, Michael L. Berger, testified that he did not know how much of the $20,252.00 claimed was paid by IDPA. The Respondent also called Lawrence G. Thompson to support its affirmative defense that the Claimant had engaged in fraudulent conduct and, therefore, its claim should be barred by the provisions of section 14 of the Court of Claims Act (Ill. Rev. Stat. 1977, ch. 37, par. 439.14), and by the provisions of section 8A—1 of the Illinois Public Aid Code (Ill. Rev. Stat. 1983, ch. 23, par. 8A—1). Thompson reviewed the prescription forms in 1982. He questioned less than two percent of all the prescriptions submitted.

The Claimant initially argues that the director of IDPA was not authorized at that time to terminate vendors under the Medical Assistance Program that were suspected of fraud. This court in *I & D Pharmacy v. State* (1984), 37 Ill. Ct. Cl. 37, has decided the same issue as raised herein. The decision in *I & D Pharmacy* was based upon the ruling of the Illinois Supreme Court in *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223. In *Bio-Medical* the director of IDPA attempted to terminate a vendor from participation in the Medicaid program for welfare recipients. The supreme court found that the director was not entitled to suspend a vendor where there were no intelligible standards provided to guide the director in the exercise of his discretion. In the absence of

statutory authority, the director may not suspend a vendor. In addition section 12—15 of the Illinois Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 12—15) provides that the Attorney General may file suit against vendors to recover overpayments made to vendors.

Since the decision in *Bio-Medical,* the General Assembly has enacted section 12—4.25 of the Illinois Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 12—4.25), which allows under certain conditions the IDPA to terminate or suspend a medical vendor and withhold payments. This statute was effective on December 1, 1977. Pursuant to section 12—4.26 of the Illinois Public Aid Code (Ill. Rev. Stat. 1977, ch. 23, par. 12—4.26), the powers conferred by section 12—4.25 are effective only subsequent to the effective date of December 1, 1977 (with certain enumerated exceptions not relevant in this case).

In *Roth v. Department of Public Aid* (1982), 109 Ill. App. 3d 457, 440 N.E.2d 910, the IDPA attempted to recoup payments made to a vendor of medical services prior to December 1, 1977. The appellate court found that section 12—4.26 of the Illinois Public Aid Code does not authorize the IDPA to exercise powers of recoupment retroactively. The Department would be able to recoup funds, but only by exercising its common law right by bringing a civil action for recovery of funds.

In *I & D Pharmacy v. State* (1984), 37 Ill. Ct. Cl. 37 this Court ruled on the identical issue raised in the instant case. It was held in that case which is dispositive of the same issue raised herein, that:

"The Respondent's initial defense is that the services rendered after the contract was terminated by the director on February 26, 1976, are not entitled to payment. The director took such action without referral of the

claimed fraud to the Attorney General for prosecution. . . . While the director has the authority to promulgate rules governing the quality and quantity of medical services rendered by vendors . . . there is no authority for the director to act as he did in the instant case terminating Claimant's rights under the contract. . . . We therefore find that the director's action was improper and that the Claimant could continue to fill prescriptions until the date it voluntarily terminated its participation in the medical assistance program." 37 Ill. Ct. Cl. 37, 38-39.

In the instant case the IDPA determination was made before the effective date of section 12—4.25 of the Illinois Public Aid Code. Based on the authority cited herein the Respondent is not entitled to withhold payments because the director of IDPA did not have the authority at the time he did so to suspend or terminate a vendor as he did in this claim. The director could have referred this matter to the Attorney General but did not do so. Therefore, the Claimant would be entitled to payment unless the Respondent could sustain its affirmative defense that the claim is barred by Claimant's alleged fraud.

In order to sustain its affirmative defense of fraud the Respondent must prove the fraudulent conduct by clear and convincing evidence. The Respondent must also prove the Claimant made a false representation with the intent to deceive. Such evidence of fraud must be affirmatively proved by clear and convincing testimony and cannot be based on suspicion. *Bethune Plaza, Inc. v. State Department of Public Aid* (1980), 90 Ill. App. 3d 1133, 414 N.E.2d 183; *Oltmer v. Zamora* (1981), 94 Ill. App. 3d 651, 418 N.E.2d 506.

A review of the evidence offered by the Respondent on its affirmative defense of fraud shows that the Respondent has not met its burden of proof by clear and convincing evidence. The Respondent's witness questioned less than two percent of the prescriptions submitted. While the Claimant could have kept better

records, that does not equate to proof of fraud. The Respondent has not met its burden of proof on the affirmative defense of fraud, and therefore the Claimant is entitled to an award for the amount claimed. See *I & D Pharmacy v. State, supra,* for the discussion of fraud as an affirmative defense in a similar factual situation.

Based upon all the evidence presented, the Claimant, Madison-Kedzie, Inc., has proved its entitlement to an award of $63,370.45.

It is hereby ordered:

That the Claimant, Madison-Kedzie, Inc., be awarded the sum of sixty-three thousand, three hundred seventy dollars and forty-five cents.