(Nos. 63082, 63539, 63540, 63541 cons

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN HAYWOOD *et al.*, Appellees.

*Opinion filed September 21, 1987.—Rehearing denied December 1, 1987.*

MILLER and CUNNINGHAM, JJ., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Robert W. Matoush, State's Attorney, of Salem (Kenneth R. Boyle and Stephen E. Norris, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Harold H. Pennock, Jr., of Hodson, Jones & Pennock, Ltd., of Centralia, for appellee John Haywood.

Neil F. Hartigan, Attorney General, of Springfield, and Don Sheafor, State's Attorney, of Vandalia (Kenneth

R. Boyle and Stephen E. Norris, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

George H. Huber and Richard O. Habermann, of Vandalia, for appellee Kenneth E. Rhodes.

Daniel M. Kirwan, Deputy Defender, and Dan W. Evers, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellees Donald R. Russell and Robert Allen Garland.

Judy L. Hogan, of Springfield, for *amicus curiae* Illinois Coalition Against Sexual Assault.

JUSTICE WARD delivered the opinion of the court:

The defendants in these consolidated appeals were individually charged with the offenses of criminal sexual assault and aggravated criminal sexual assault in violation of sections 12—13 and 12—14 of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, pars. 12—13, 12—14). In each case the circuit court dismissed the charges, holding that the statutes upon which the defendants were charged were unconstitutionally vague and overbroad. The State appealed each dismissal directly to this court under our Rule 603 (107 Ill. 2d R. 603), and we have consolidated the appeals.

Defendant John Haywood was charged in Marion County in an information of two counts with aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14). Count I was brought under section 12—14(a)(1) of the Criminal Code and alleged that the defendant, using a dangerous weapon, to wit, a knife, "by the use of force *** placed his penis into the vagina of [the complainant]." Count II charged the defendant under section 12—14(a)(2), alleging that the defendant caused bodily

harm to the victim in committing the offense of criminal sexual assault.

Defendants Rhodes, Russell and Garland were individually charged by indictment in Fayette County with one count of aggravated criminal sexual assault under section 12—14(a)(2) and in a second count with the lesser included offense of criminal sexual assault under section 12—13(a)(1). Garland was also charged in a third count with a second offense of criminal sexual assault, which arose out of an incident separate from that alleged in counts I and II. Each count of the indictments alleged that the defendant "by the use of force *** placed his penis in the vagina of [the complainant]."

Prior to trial each defendant filed a motion to dismiss the charges, claiming that the statutory definitions of criminal sexual assault and aggravated criminal sexual assault are so vague and overbroad that they violate the constitutional guarantees of due process (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2). The circuit court of Marion County granted defendant Haywood's motion, holding the entire Criminal Sexual Assault Act, sections 12—12 through 12—18 of the Criminal Code (Ill. Rev. Stat. 1985, ch. 38, pars. 12—12 through 12—18), unconstitutional. Following a motion by the State to reconsider, the court modified its judgment, limiting its holding of unconstitutionality to sections 12—13(a)(1) and 12—14(a)(2). The circuit court of Fayette County dismissed the indictments against Russell, Garland and Rhodes on the same grounds that the circuit court of Marion County relied on, vagueness and overbreadth.

Criminal sexual assault is defined in section 12—13(a)(1) of the Criminal Code, which *inter alia* provides:

"The accused commits criminal sexual assault if he or she:

(1) commits an act of sexual penetration by the use of force or threat of force ***." Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1).

"Sexual penetration" is defined as:

"[A]ny contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration ***." Ill. Rev. Stat. 1985, ch. 38, par. 12—12(f).

"Force or threat of force" is defined in section 12—12(d) as:

"The use of force or violence, or the threat of force or violence, including but not limited to the following situations:

(1) when the accused threatens to use force or violence on the victim or on any other person, and the victim under the circumstances reasonably believed that the accused had the ability to execute that threat; or

(2) when the accused has overcome the victim by use of superior strength or size, physical restraint or physical confinement." Ill. Rev. Stat. 1985, ch. 38, par. 12—12(d).

Relatedly, section 12—17 of the Act provides that consent shall be a defense to any charge under section 12—13 through section 12—16 "where force or threat of force is an element of the offense."

"Consent" is defined as:

"[A] freely given agreement to the act of sexual penetration or sexual conduct in question. Lack of verbal or physical resistance or submission by the victim resulting from the use of force or threat of force by the accused shall not constitute consent." Ill. Rev. Stat. 1985, ch. 38, par. 12—17.

The defendants claim that section 12—13(a)(1), defining the offense of criminal sexual assault, is unconstitutionally vague on its face because the statute fails to ad-

equately specify the conduct it proscribes and fails to provide an ascertainable standard for its enforcement. Specifically, they contend that one cannot determine from the definition of "force or the threat of force" set out in section 12—12(d) of the Code the nature of the force that is required for the commission of the offense. They say that the offense defined in section 12—13(a)(1) is in derogation of the common law offense of rape. Thus, the statute must be strictly construed and "force" must be literally interpreted without resort to any extrinsic considerations. The defendants assert that "force" must therefore be construed in its broadest sense possible and include every notion of force imaginable. Based on this literal and completely broad interpretation of the statute, the defendants conclude that the statute contains no standard to determine the nature or quality of force required to constitute an offense under the statute.

It is basic that due process requires that the proscriptions of a penal statute be clearly defined. (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2299; *People v. Wawczak* (1985), 109 Ill. 2d 244, 248; *People v. Caffrey* (1983), 97 Ill. 2d 526, 530.) "[I]mpossible levels of specificity" are not required (97 Ill. 2d 526, 530; *People v. Dednam* (1973), 55 Ill. 2d 565, 567-68), but a penal statute must convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices" (*United States v. Petrillo* (1947), 332 U.S. 1, 8, 91 L. Ed. 1877, 1883, 67 S. Ct. 1538, 1542; *City of Decatur v. Kushmer* (1969), 43 Ill. 2d 334, 336). The statute, too, must provide definite standards, so as to avoid arbitrary and discriminatory enforcement and application by police officers, judges and juries. *People v. Bales* (1985), 108 Ill. 2d 182, 188; *People v. Garrison* (1980), 82 Ill. 2d 444, 453.

"It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." (*United States v. Mazurie* (1975), 419 U.S. 544, 550, 42 L. Ed. 2d 706, 713, 95 S. Ct. 710, 714; see also *People v. Bales* (1985), 108 Ill. 2d 182, 189.) If, however, the statute is challenged on the ground that it is unconstitutionally vague on its face, it will be held unconstitutional for vagueness only if it is "incapable of any valid application." (*Steffel v. Thompson* (1974), 415 U.S. 452, 474, 39 L. Ed. 2d 505, 523, 94 S. Ct. 1209, 1223; *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 497, 71 L. Ed. 2d 362, 371, 102 S. Ct. 1186, 1192; *People v. Wawczak* (1985), 109 Ill. 2d 244, 249.) That is, the statute will be considered vague "in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati* (1971), 402 U.S. 611, 614, 29 L. Ed. 2d 214, 217, 91 S. Ct. 1686, 1688.

The statutes questioned here, however, cannot be considered vague unless "force" is literally interpreted as to mean every possible use of force. Common sense tells us that the legislature, in enacting the Criminal Sexual Assault Act, did not intend the creation of a new definition of force and one so broad that it would include all conceivable notions of the word. It cannot be presumed that the General Assembly, in legislating, intended obscurity, or "to override common sense." (*United States v. Brown* (1948), 333 U.S. 18, 25, 92 L. Ed. 442, 448, 68 S. Ct. 376, 380; *People v. Steppan* (1985), 105 Ill. 2d 310, 316.) Furthermore, the defendants' interpretation is inconsistent with established principles of statutory construction. The statute should be be given a construction that is consistent with the purpose and policies of the statute.

In construing a statute, it is of course fundamental that a court is to "ascertain and give effect to the legis-

lative intent." (*People v. Maya* (1985), 105 Ill. 2d 281, 287; *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41.) In doing this, the court should consider not only the language of the statute but also the "reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained." (*People v. Steppan* (1985), 105 Ill. 2d 310, 316, quoting *People v. Alejos* (1983), 97 Ill. 2d 502, 511; *Gill v. Miller* (1983), 94 Ill. 2d 52, 56.) Although penal statutes are to be strictly construed in favor of the accused, they must not be so rigidly construed as to defeat the intent of the legislature. (*People v. Rink* (1983), 97 Ill. 2d 533, 541; *People v. Bratcher* (1976), 63 Ill. 2d 534, 543.) On the contrary, statutes are presumed constitutional, and "[i]t is our duty to construe acts of the legislature so as to affirm their constitutionality and validity, if it can reasonably be done, and further if their construction is doubtful, the doubt will be decided in favor of the validity of the law challenged." *People v. Bales* (1985), 108 Ill. 2d 182, 188, quoting *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.* (1969), 42 Ill. 2d 385, 389.

The Criminal Sexual Assault Act (Pub. Act 83—1067, amended by Pub. Act 83—1117), repealed eight of the statutes which had defined sex offenses in sections 11—1 through 11—11.1 of the Criminal Code. The sponsors of the Act repeatedly stated that the central purpose of the bill was to recodify the sexual offenses into a comprehensive statute with uniform statutory elements that would criminalize all sexual assaults without distinguishing between the sex of the offender or the victim and the type of sexual act proscribed. (83d Ill. Gen. Assem., House Proceedings, May 10, 1983, at 162-63.) Prior to the passage of the Act, of the eight sex offense statutes found in sections 11—1 through 11—11.1, only two applied to adult victims—rape and deviate sexual assault.

Both offenses included the requirement that the sexual act involved be committed by "force" (Ill. Rev. Stat. 1983, ch. 38, pars. 11—1, 11—3), and "force" was to be given the same meaning in both statutes. See Ill. Ann. Stat., ch. 38, par. 11—3, Committee Comments, at 177-78 (Smith-Hurd 1979); see also *People v. Mueller* (1973), 54 Ill. 2d 189, 193; *People v. Walsh* (1980), 80 Ill. App. 3d 754, 764; *People v. O'Brien* (1979), 74 Ill. App. 3d 256, 258.

The Criminal Sexual Assault Act repealed both of these statutes and created the offense of criminal sexual assault, which is defined in similar terms—the act of "sexual penetration" must be accomplished by the use of "force or threat of force." Furthermore, the definition of "sexual penetration" found in section 12—12(f) encompasses both the act of "sexual intercourse" defined in the repealed rape statute and that of "deviate sexual conduct" found in the repealed statute of deviate sexual assault. See Ill. Rev. Stat. 1983, ch. 38, par. 11—2.

Section 12—13(a)(1) is therefore clearly the intended sex offense replacement for the repealed statutes of rape and deviate sexual assault. It is only reasonable to assume that the legislature intended to retain the same meaning of "force" that was given under the offenses of rape and deviate sexual assault. It is an axiom of statutory construction that a statute alleged to be in derogation of the common law should not be construed as changing the common law beyond what is expressed by the words in the statute or is necessarily implied from it. *In re W.W.* (1983), 97 Ill. 2d 53, 57; *Cedar Park Cemetery Association, Inc. v. Cooper* (1951), 408 Ill. 79, 82-83; *Walter v. Northern Insurance Co.* (1938), 370 Ill. 283, 288-89.

There is nothing in the language of the Act or the legislative record which indicates that the General Assembly intended a new definition of force that would

criminalize conduct that was not criminalized under the repealed statutes. On the contrary, there is direct evidence from the legislative debates that demonstrates the legislature's intent to retain the common law definition of force found in both of the repealed offenses. (See 83d Ill. Gen. Assem., House Proceedings, June 14, 1984, at 63.) The statutes in question, therefore, cannot be construed to proscribe sexual acts between two consenting adults, as the defendants suggest. They are designed as their predecessors, to proscribe those acts of sexual penetration accomplished by the use of force.

The defendants argue, however, that it could not have been the legislature's intent to retain the definition of "force" found in the repealed statutes. They contend that the force there was required to be of a nature to show that the act was committed "against the will" of the victim, as in the rape statute, or that the victim was "compelled" to submit to the act in question, as in the deviate sexual assault statute. The defendants note that the legislature did not include as an element in the new statute a requirement that the act be committed "against the will" of the victim or that the victim be "compelled" by the defendant to perform the act. The defendants also state that in the Criminal Sexual Assault Act the legislature has expressly made "consent" a defense to be raised by the defendant. Therefore, the defendants argue, the legislature could not have intended the term "force", as used in section 12—13(a)(1), to be limited to that force which compels an individual to engage in sexual activity against his or her will but, rather, it was the legislature's intent that the state of mind of the victim was to be irrelevant. As a result, force must be construed, they say, to mean simply any force, *i.e.*, simply the physical act involved in the act of sexual penetration, whether with consent or not. Based on this premise, the defendants claim that under the

statute any act of sexual penetration can be charged as criminal sexual assault, and the burden will be on the defendant to prove consent.

Although the definition of criminal sexual assault under section 12—13(a)(1) does not refer to either compulsion or consent, this does not mean that consent of the victim is irrelevant in determining whether there was an offense. In common understanding, if it is said that one was forced to perform an act, it follows that the person's act was nonconsensual; and if one freely consents to the performance of an act upon oneself, clearly that person has not been forced. Thus, although the prosecution is not required to prove nonconsent formally, it is obvious that if the prosecution shows that there was an act of sexual penetration by force, that evidence demonstrates that the act was nonconsensual. To prove the element of force is implicitly to show nonconsent. Too, if force is established it would be redundant to require a separate showing of nonconsent as part of the prosecution's case in chief. Thus, consent is made a defense to be raised by the accused to rebut evidence of force presented by the State. It is clear from the legislative debates, however, that if the accused raises a question of the consent, the State has a burden of proof beyond reasonable doubt on the issue of consent as well as, on the issue of force. See 83d Ill. Gen. Assem., House Proceedings, Oct. 19, 1983, at 217.

In light of all of this, we judge that the statute is not vague as to what conduct is proscribed. Centering on the defendants' argument on what force is intended to be violative, we consider that a person of common intelligence and experience can distinguish, without difficulty, between sexual acts accomplished by force, as that term is meant in the statute, and, for example, sexual activity between consenting adults. We hold that section 12—13(a)(1) satisfies the requirements of due process.

The defendants also contend that on its face the statute is unconstitutionally overbroad because it can be interpreted to criminalize constitutionally protected activity. To demonstrate, the defendants set forth several hypothetical situations in which they say section 12—13(a)(1) could be applied to make criminal sexual relations between persons whose conduct is protected, they say, under the constitutional right to privacy. Each of the hypotheticals is based on the premise that because the term "force" is so broadly defined in the statute, the physical force involved in consensual sexual activity could subject a participant to prosecution under the statute. In light of what we have said above, this contention is without substance.

Also, it is relevant to point out that one may challenge a statute as overbroad on the ground that it may be applied unconstitutionally to situations and questions not before the court only if the statute is one that may inhibit the exercise of rights of expression or association protected under the first amendment. (*Broadrick v. Oklahoma* (1973), 413 U.S. 601, 611-12, 37 L. Ed. 2d 830, 839-40, 93 S. Ct. 2908, 2915-16; *New York v. Ferber* (1982), 458 U.S. 747, 768, 73 L. Ed. 2d 1113, 1130, 102 S. Ct. 3348, 3360-61; *People v. Caffrey* (1983), 97 Ill. 2d 526, 529; *People v. Holder* (1983), 96 Ill. 2d 444, 449.) One cannot assert others' rights of privacy which do not involve rights of expression or association but are rights which "by their nature [are] generally unknown to prosecutors and therefore are not easily inhibited by official action." *People v. Garrison* (1980), 82 Ill. 2d 444, 450.

The circuit courts here also held that the definition of "bodily harm" set out in the statute defining the offense of aggravated criminal sexual assault (section 12—14(a)(2)) lacks a sufficiently objective standard to permit a determination of what bodily harm is to be found for a violation of the statute. The courts said that "bodily

harm" is simply "physical harm" without signifying a specific type of harm. Therefore, the courts stated, because the definition of "bodily harm" is not restricted in any way, they consider that an act of "sexual penetration alone constitutes bodily harm by the mere invasion of the victim's sexual anatomy." They believe further that the statute would permit a prosecutor to use the very act that constitutes a criminal sexual assault to enhance the offense to that of aggravated criminal sexual assault.

Section 12—14(a)(2) of the Criminal Code does provide that the offense of criminal sexual assault under section 12—13 is enhanced to aggravated criminal sexual assault, a Class X felony, if the offender causes "bodily harm to the victim" in committing the act of criminal sexual assault. (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2).) "Bodily harm" as defined in section 12—12(b) "means physical harm, and includes, but is not limited to, sexually transmitted disease, pregnancy and impotence." Ill. Rev. Stat. 1983, ch. 38, par. 12—12(b).

But the term "bodily harm" has a well-known legal meaning, and when a statute contains language with an ordinary and popularly understood meaning, courts will assume that that is the meaning intended by the legislature. (*People v. Schwartz* (1976), 64 Ill. 2d 275, 280; *People v. Dednam* (1973), 55 Ill. 2d 565, 568.) In *People v. Mays* (1982), 91 Ill. 2d 251, this court addressed the question of what constitutes "bodily harm" in the context of the statute defining battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—3) and stated:

> "Although it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the statute, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent is required." 91 Ill. 2d 251, 256.

We consider that it is proper to give "bodily harm," as defined in section 12—14, the same meaning that this court in *Mays* interpreted bodily harm to mean under the battery statute. This interpretation is consistent with the commonly understood meaning of bodily harm. See also *People v. Boyer* (1985), 138 Ill. App. 3d 16, 18-19; *People v. Wallace* (1986), 145 Ill. App. 3d 247, 251.

Under this construction, the term "bodily harm" is certainly sufficiently definite to meet the requirements for due process. The trial courts erred in holding that section 12—14(a)(2) was unconstitutionally vague and indefinite.

For the reasons given the judgments of the circuit courts of Marion and Fayette Counties are reversed and the causes are remanded to the circuit courts for further proceedings consistent with this opinion.

*Judgments reversed*
*and remanded.*

MILLER and CUNNINGHAM, JJ., took no part in the consideration or decision of this case.