THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THERIAL BYNUM, Defendant-Appellant.

First District (6th Division)   No. 1—89—0701

Opinion filed April 27, 1990.

Massucci, Blomquist, Brown & Judson, of Arlington Heights (Douglas A. Judson, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and William P. Pistorius, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant was convicted of conspiracy to commit the offense of kickbacks in violation of section 8A—3(b) of the Illinois Public Aid Code (Ill. Rev. Stat. 1985, ch. 23, par. 8A—3(b).) Defendant was sentenced to one year of probation, $5,000 restitution and 100 hours of community service. The issues presented on appeal are: (1) whether the statute under which defendant was convicted was unconstitutionally vague and (2) whether his conduct was proscribed by the statute.

Defendant, Dr. Therial Bynum, was a licensed medicaid provider who operated a medical practice on the northside of Chicago. According to defendant's brief, the majority of his patients were medicaid recipients. Scott Deubel, a medical fraud investigator for the Illinois State Police Department, testified at defendant's trial that he investigated the business relationship between defendant and Gran-Cal clinical laboratory, which was owned and operated by Oscar and Fe Millare. Deubel stated that between January and June 1985, defendant

sent around 85% of his medical specimens to Gran-Cal laboratory for testing. From July to December 1985, defendant sent all of his specimens to Gran-Cal, and from January to June of 1986, Gran-Cal received 92% of defendant's specimens. According to Deubel's testimony, defendant informed him that he was approached by Oscar Millare in August of 1985, and that Millare offered to pay defendant's receptionist a salary of $550 a month if defendant would do business with Gran-Cal. Defendant entered into an agreement with Gran-Cal and hired Lettie Sims as his receptionist. Defendant also told Deubel that beginning in January 1986, he was approached on several occasions by Fe Millare, who offered to pay defendant $10 a day for every day he sent the laboratory four or more health profiles, $5 for every ultrasound and $2 for each EKG. Defendant told Deubel that he responded to Millare's offer by telling her that he would order tests that were needed, and he denied accepting money from her. Defendant stated that he stopped doing business with Gran-Cal in September 1986, when the laboratory informed him that it would no longer pay the salaries of Sims and another receptionist who had also been hired under the same financial agreement between Millare and defendant.

Oscar Millare testified that he worked as a sales representative for Gran-Cal laboratory, and that in August of 1985, defendant asked Millare to pay the salary of defendant's receptionist in exchange for defendant's use of Gran-Cal's laboratory services. Millare also stated that several months later defendant requested another receptionist under the same arrangement and hired Jocelyn Riley. Millare paid the salaries of Sims and Riley but did not supervise their performance. Millare also testified that he gave defendant approximately $3,000 as a loan for moving expenses.

Fe Millare testified that she was president of Gran-Cal and Oscar Millare's former wife. She acknowledged that she had falsified physician requisition and billing forms by adding testing procedures and billing the Department of Public Aid. She also corroborated the former testimony of Deubel and Oscar Millare regarding defendant's financial arrangement with Gran-Cal. In March of 1986, Fe Millare told defendant that she had a problem with the Department of Public Aid and asked him to alter his records to match the billing records of Gran-Cal, which defendant agreed to do. Fe Millare also testified that defendant accepted cash payments for ordering additional laboratory tests. Both Fe and Oscar Millare pleaded guilty to soliciting and paying kickbacks.

Jocelyn Riley testified that she began working for defendant in October of 1985, and that her duties included greeting patients, tak-

ing medical histories, filling out forms, filing charts, weighing and taking patients' temperatures and sweeping the offices. Although Riley performed these tasks for defendant, her salary was paid by Gran-Cal.

Defendant testified that he offered to send his specimens to Gran-Cal for laboratory analysis. He stated that, although the salaries of Sims and Riley were paid by Gran-Cal, the Millares never asked for anything in return. In April 1986, Fe Millare told defendant that Oscar Millare had been falsifying the billing to the Department of Public Aid. Defendant stated that he was appalled when she asked him to alter his records to correspond with those of the laboratory, and he refused to do so. Defendant also claimed that he refused to accept any cash payment to order additional testing.

On cross-examination, defendant acknowledged that he never repaid Oscar Millare the money loaned to him for moving expenses. He also testified that, although he knew in April of 1986 that Gran-Cal was falsifying bills sent to the Department of Public Aid, he continued using the laboratory's services until September of that year.

Defendant contends that the statute is unconstitutionally vague and a violation of his right to due process because the term kickback or bribe and the phrase "in connection with the furnishing of medical assistance" are not defined, and defendant did not receive adequate notice that his conduct was proscribed. The relevant portion of the statute under which defendant was convicted states:

"Any person, firm, corporation, association, agency, institution or other legal entity that solicits, offers or receives any kickbacks or bribes in connection with the furnishing of medical assistance, or solicits, offers or receives any rebate of any fee or charge for referring any individual to another person for the furnishing of medical assistance under this code, is guilty of a violation of this Article ***." (Ill. Rev. Stat. 1985, ch. 23, par. 8A—3(b).)

All statutes are presumed to be constitutional, and a party challenging a statute has the burden of establishing the alleged constitutional violation. (*People v. Bales* (1985), 108 Ill. 2d 182, 188, 483 N.E.2d 517, 519.) Furthermore, courts have a duty to construe the acts of the legislature so as to uphold their constitutional validity if it can be reasonably done. (*Bales*, 108 Ill. 2d at 188, 483 N.E.2d at 520.) In construing a statute, the court should consider not only the language of the statute but also the reason and necessity for the law, the evils to be remedied, as well as its object and purpose. (*People v. Haywood* (1987), 118 Ill. 2d 263, 271, 515 N.E.2d 45, 49.) Although criminal statutes

are to be strictly construed in favor of the accused, they should not be subject to so rigid an interpretation so as to defeat the intent of the legislature. (*Haywood*, 118 Ill. 2d at 271, 515 N.E.2d at 49.) It is also well established that where a statute is challenged on the basis of vagueness, and first amendment freedoms are not at issue, the statute must be examined in light of the facts of the particular case. (*People v. Jihan* (1989), 127 Ill. 2d 379, 385-86, 537 N.E.2d 751, 754; *Haywood*, 118 Ill. 2d at 271, 515 N.E.2d at 51.) In addition, due process requires that the prohibited conduct of a penal statute be clearly defined and give sufficient warning as to the proscribed conduct when measured by common understanding and practice. *Haywood*, 118 Ill. 2d at 269, 515 N.E.2d at 48.

■ Defendant claims that the statute does not sufficiently define the term kickbacks. Although the constitutionality of this statute has not been reviewed, the language of the statute is similar to the 1977 version of the Federal statute prohibiting kickbacks. (See 42 U.S.C. §1396h(b)(1) (1972) (amended 1977).) Therefore, some guidance is provided by case law interpreting the Federal statute. In *United States v. Hancock* (7th Cir. 1979), 604 F.2d 999, the court defines kickbacks as "a percentage payment *** for granting assistance by one in a position to open up or control a source of income." (*Hancock*, 604 F.2d at 1002, quoting Webster's Third New International Dictionary 124, (1966).) The Federal statute survived a "vagueness" challenge because the *Hancock* court held that "the term kickback has a commonly understood meaning," and the defendants received fair notice that their conduct was forbidden. (*Hancock*, 604 F.2d at 1002.) The definition of kickbacks established by the court in *Hancock* was upheld by the Seventh Circuit in *United States v. Ruttenberg* (7th Cir. 1980), 625 F.2d 173, 176, and by this court in *Bethune Plaza, Inc. v. Department of Public Aid* (1980), 90 Ill. App. 3d 1133, 1139 n.1, 414 N.E.2d 183, 188 n.1.

Defendant cites *United States v. Porter* (5th Cir. 1979), 591 F.2d 1048, in support of his argument that the statute is vague. Although the *Porter* court did not find the Federal statute unconstitutional, the court did find that the statute failed to give the defendants a clear warning that their conduct was prohibited. However, the holding in *Porter* has been specifically rejected by the Seventh Circuit in *Ruttenberg* (625 F.2d at 176), and *Hancock* (604 F.2d at 1002), which are both supported by *Bethune Plaza, Inc.* (90 Ill. App. 3d at 1139, 414 N.E.2d at 188). Defendant also argues that the fact that there was an amendment to the Federal statute in 1977 and the Illinois statute in 1987 indicates that the previous versions of the statutes were unclear. In

both instances, the statutory language was amended to include the conduct prohibited as the solicitation or receipt of

"any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in kind." (Ill. Rev. Stat. 1987, ch. 23, par. 8A—3(b).)

(See also, 42 U.S.C. §1369h(b)(1) (1977).) However, defendant's argument is refuted by the court in *United States v. Powell* (1975), 423 U.S. 87, 46 L. Ed. 2d 228, 96 S. Ct. 316, which held:

"The fact that Congress might, without difficulty, have chosen '[c]learer and more precise language' equally capable of achieving the end sought does not mean that the statute which it in fact drafted is unconstitutionally vague." *Powell*, 423 U.S. at 94, 46 L. Ed. 2d at 235, 96 S. Ct. at 321, quoting *United States v. Petrillo* (1947), 332 U.S. 1, 7, 91 L. Ed. 1877, 1883, 67 S. Ct. 1538, 1541.

Defendant further attempts to strengthen his vagueness claim by comparing the facts in this case to those in *Jihan* (127 Ill. 2d 379, 537 N.E.2d 751), which held that a former provision of the medical practice act prohibiting the unlicensed practice of midwifery was unconstitutionally vague. The basis of the court's ruling was its determination that the provision was unclear as to whether the term midwifery encompassed the assistance at a delivery or whether it was limited to the actual performance of the delivery. The *Jihan* court also affirmed the principle that a party challenging the statute as vague must show that it was vague as to the conduct for which the party was prosecuted. (*Jihan*, 127 Ill. 2d at 385-86, 537 N.E.2d at 754.) Viewing the term kickbacks in the context of the instant case, we do not find the ambiguity in the term that was found by the *Jihan* court in the term midwifery. Furthermore, kickbacks, unlike midwifery, has been identified as a term which is commonly used and understood. Therefore, we also conclude that the term kickbacks as defined in Webster's Third New International Dictionary and by the Seventh Circuit decisions has a commonly understood meaning, and the Illinois statute under which defendant was convicted was not unconstitutionally vague. See also *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 395 N.E.2d 1376.

■ Defendant also contends that his conduct was not proscribed by the statute. However, we find defendant's arguments supporting this contention to be without merit. Defendant first argues that under the definition of kickbacks advanced in *Hancock* and accepted by this court, his agreement with Gran-Cal regarding the referral of business to the laboratory in exchange for the payment of his receptionists'

salaries was not proscribed because the amount of the salaries remained constant although the amount of referrals fluctuated. However, the evidence established that there was a direct connection between the referral of specimens to Gran-Cal and the payment of the salaries, and that once Gran-Cal stopped payment of the salaries, defendant no longer sent specimens to the laboratory. We find this fact dispositive of the determination that the payment of the salaries was a kickback payment for the referral of business to Gran-Cal. Defendant also claims that his conduct was not proscribed by the statute because the 1977 amendment to the Federal statute and the 1987 amendment to the Illinois statute do not prohibit

> "any amount paid by an employer to an employee who has a bona fide employment relationship with such employer for employment in the provision of covered items or services." (Ill. Rev. Stat. 1987, ch. 23, par. 8A—3(d)(2).)

(See also 42 U.S.C. §1396h(b)(3) (1977).) However, neither defendant's nor Gran-Cal's relationship with the receptionists was a "bona fide employment relationship" because, while their salaries were paid by Gran-Cal, they performed work for defendant. Furthermore, the version of the statute under which defendant was convicted did not contain this exemption. The trial court's finding that defendant's conduct was proscribed by the statute is also supported by Fe Millare's testimony that defendant agreed to alter his records to coincide with the falsified records of Gran-Cal, and that he accepted cash payments to order additional testing. Even though defendant denied this conduct, the credibility of the witnesses is determined by the trier of fact. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Defendant also acknowledged that he continued to refer business to Gran-Cal when he knew that it was falsifying its records. We, thus, conclude that defendant's conduct was proscribed by the statute.

Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.