THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE HURTADO, Defendant-Appellant.

Second District   No. 2—89—1042

Opinion filed January 30, 1991.

Peter A. Staben and Richard S. Kopsick, both of Staben & Kopsick, of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial, defendant, Jose Hurtado, was found guilty of the offense of the unlawful sale of a firearm (Ill. Rev. Stat. 1989, ch. 38, par. 24—3(g)). Defendant raises three issues on appeal: (1) whether section 24—3(g) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 24—3(g)) applies to the facts of this case; (2) whether the State proved all the elements of the offense beyond a reasonable doubt; and (3) whether defendant's acts fell within the exemption provided by section 24—3(g)(1) of the

Code (Ill. Rev. Stat. 1989, ch. 38, par. 24—3(g)(1)).

Defendant was charged by complaint with the offense of the unlawful sale of a firearm by knowingly delivering a 30-30 caliber rifle to Victor Valdez without withholding delivery of the rifle for 24 hours after Valdez applied to purchase it. Subsequently, the State filed additional counts against defendant in an information. In count II, the State charged defendant with the offense of the unlawful use of weapons (Ill. Rev. Stat. 1989, ch. 38, par. 24—1(a)(10)); counts III and IV both charged the offense of failing to have a firearm owner's identification card (Ill. Rev. Stat. 1989, ch. 38, par. 83—2(a)).

At the trial, special agent Victor Valdez, of the Illinois State Police, testified that on January 25, 1989, he and another special agent were working undercover to investigate the illegal sale of weapons in Lake County, Illinois. On that evening, Valdez and special agent Chevarria went to Fernando's Tap in North Chicago to meet Rafael Carranza. Valdez had met with Carranza a week earlier, and they agreed to meet on January 25 "[t]o make arrangements to purchase weapons." After meeting Carranza at Fernando's, the agents followed Carranza to his house in Waukegan. Carranza told the agents to wait in their vehicle. Carranza then went into the house and emerged a half hour later with defendant. Carranza introduced defendant to the agents, and then Carranza instructed the agents to follow them to defendant's house. At defendant's house, the four engaged in a brief conversation; then defendant went into the house. Defendant returned carrying a rifle case and a box of shells. Defendant unzipped the case and showed the rifle to the agents. Valdez examined the rifle and then handed Carranza $350, "the agreed amount *** to purchase the weapon." Defendant handed the rifle to Valdez.

Valdez further testified that defendant never asked why Valdez wanted the rifle, nor did he ask to see a firearm owner's identification card. About one month after the purchase of the rifle, Valdez arrested defendant. Valdez asked defendant if he had owned the rifle. Defendant told Valdez that he had purchased the rifle two months earlier at Fernando's, for $200. Defendant also admitted to Valdez that, out of the $350 from the sale of the rifle, defendant kept $300 and gave $50 to Carranza.

On cross-examination, Valdez stated that defendant told him that, when the agents and Carranza arrived at Carranza's house on January 25, defendant had been asleep and Carranza woke him up. Valdez explained that at the meeting with Carranza the week before

January 25, they made arrangements to purchase a weapon on the 25th. At this point, the following exchange occurred:

"Q. When you made arrangements for the purchase of the weapons on the 25th[,] you and Mr. Carranza agreed to the purchase of the weapon[,] to go head *** out and look for the weapon, is that correct?

A. Sure.

Q. That was the agreement between the two of you and Mr. Jose Hurtado was not part of that, at that time?

A. No."

Valdez was the State's only witness, and, at the close of his testimony, defendant made a motion for a directed verdict. The court granted the motion as to counts II through IV, but denied the motion as to count I.

Defendant did not present any evidence but renewed his motion for a directed verdict on count I, which was denied. The jury subsequently found defendant guilty of the offense of the unlawful sale of a firearm.

Defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. In the motion, defendant specifically alleged that the State failed to prove his guilt beyond a reasonable doubt and that the court erred in not granting the motion for a directed verdict. At the hearing on the motion, defendant argued that the evidence showed that more than 24 hours had passed since Valdez made an "application" to purchase the rifle and that the State failed to show that an "application" was made. Defendant also argued that he could not be convicted of the offense because the purchaser of the rifle was a police officer. The court stated its belief that the exemption in the statute had an implied element of knowledge that the person to whom the weapon is sold is a police officer. Since defendant was not aware that Valdez was a police officer, the court found that the exemption was not applicable. The court denied the motion in its entirety. Defendant's timely appeal followed.

Defendant first contends that he could not be convicted of the offense of the unlawful sale of a firearm because his actions do not fall within the purview of the statute. Section 24—3(g) of the Criminal Code of 1961 (Code) provides in pertinent part that a person commits the offense when he knowingly:

"[D]elivers any rifle, shotgun or other long gun, incidental to a sale, without withholding delivery of such rifle, shotgun or other long gun for at least 24 hours after application for

its purchase has been made." (Ill. Rev. Stat. 1989, ch. 38, par. 24—3(g).)

According to defendant, this statute applies only to firearm dealers who, in the ordinary course of business, provide and accept applications for the purchase of firearms.

■■ In construing a statute, the court must discover the intent of the legislature in order to give it effect. (*People v. Parker* (1988), 123 Ill. 2d 204, 209.) The intent may be discerned from the statutory language itself and the purpose of the legislation. (*People v. Haywood* (1987), 118 Ill. 2d 263, 271.) Although criminal statutes must be construed strictly in favor of the defendant and may not be extended to apply to facts which do not, by the strictest construction, come under their provisions (*People v. Parvin* (1988), 125 Ill. 2d 519, 525), they must not be so rigidly construed as to defeat the intent of the legislature (*Haywood*, 118 Ill. 2d at 271).

■■ The statute makes it an offense for "[a] person" to sell a firearm without waiting the requisite time period. (See Ill. Rev. Stat. 1989, ch. 38, par. 24—3.) A "person" includes individuals (Ill. Rev. Stat. 1989, ch. 38, par. 2—15), so defendant could be liable under the statute.

■■ Defendant also argues that the term "application" in the statute must refer to a written application. The parties have not cited, nor have we found, any authority which construes section 24—3(g). When a statute does not define its terms, those terms will be given their ordinary and popular meaning. (*Haywood*, 118 Ill. 2d at 276.) Black's Law Dictionary defines "application" as:

> "A putting to, placing before, preferring a request or petition to or before a person. The act of making a request for something. A petition." (Black's Law Dictionary 90 (5th ed. 1979).)

This definition allows for both an informal request or a formal petition.

■■ When a statute is ambiguous, courts may look to similar statutes as an aid to construction. (*People v. Badoud* (1988), 122 Ill. 2d 50, 55.) Section 24—4 of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 24—4) indicates that the informal request is the correct definition for "application" in the statute. Section 24—4 provides that a seller "shall keep a register of all firearms sold or given away" and that "[s]uch register shall contain the date of the sale or gift, the name, address, age and occupation of the person to whom the weapon is sold or given, the price of the weapon, the kind, description and number of the weapon, and the purpose for which it is

purchased and obtained." (Ill. Rev. Stat. 1989, ch. 38, pars. 24—4(a), (b).) The seller must retain the register and allow a peace officer to inspect it. (Ill. Rev. Stat. 1989, ch. 38, par. 24—4(c).) Similarly, section 83—3(b) of the Code, which requires a person who transfers a firearm to keep a record of the transfer, lists the information which must be included in the record and provides that the person must allow a peace officer to inspect it. (Ill. Rev. Stat. 1989, ch. 38, par. 83—3(b).) Section 24—3(g), unlike sections 24—4 and 83—3(b), does not specify what should be included on the "application" or what shall be done with it. This leads us to the conclusion that, had the legislature intended the "application" to be a formal, written document, the legislature would have prescribed what information was necessary on the "application" and what was to be done with it.

▉ Defendant, however, argues that because the term "application" is used in section 83—4 (Ill. Rev. Stat. 1989, ch. 38, par. 83—4), the section regarding applications for firearm owners' identification cards, the term "application" as used in section 24—3(g) must necessarily include a form. The language of section 83—4 refutes this argument. Section 83—4 states that "[e]ach applicant *** shall *** [m]ake application on blank forms prepared and furnished *** by the Department of State Police." (Ill. Rev. Stat. 1989, ch. 38, par. 83—4(a)(1).) Section 83—4 specifically states that the "application" shall be made on a form; section 24—3(g) does not contain this requirement. Thus, the use of the term "application" in section 83—4 is not at odds with the interpretation of the term as merely "a request." We therefore conclude that the legislature intended that the term "application" have the meaning of "request" and the statutory requirement is an informal request to purchase a firearm. Since we believe the legislature intended that "application" mean "request," we shall use the terms "application" and "request" interchangeably.

▉ Defendant next contends that the State failed to prove beyond a reasonable doubt that he did not withhold delivery of the rifle for 24 hours after application for its purchase. The standard for determining whether a defendant has been proved guilty beyond a reasonable doubt usually is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) Because the facts in this cause are undisputed and the decision turns only on the proper interpretation of the statute, we may, instead, review

the issue as a matter of law. *People v. 1946 Buick, VIN34423520* (1989), 127 Ill. 2d 374, 378.

According to defendant, Valdez requested to purchase the rifle one week prior to the January 25, 1989, delivery, when he set up the meeting with Carranza. Defendant concludes that this request constitutes an application more than 24 hours prior to delivery of the rifle.

■■ The jury instructions stated that the State was required to prove that defendant delivered the rifle "within 24 hours after application for its purchase had been made." The instructions did not inform the jury that defendant could not be found guilty of the offense if the initial application was made more than 24 hours before the time of delivery. The State proved that a request for the purchase of the rifle was made within minutes of its delivery. The statute cannot be interpreted to mean that any request made within 24 hours of delivery will support a conviction. Otherwise, if a seller was required to withhold delivery of a weapon after any request, not just the initial request, the weapon could never be delivered because every time the purchaser asked for it, a new waiting period would commence. It is axiomatic that the legislature could not have intended such an absurd result. (*People v. Steppan* (1985), 105 Ill. 2d 310, 316.) Consequently, the statute must be interpreted to mean that an accused violates the statute if he does not withhold delivery of a rifle for 24 hours after the initial request for its purchase.

■■ The State argues that the evidence showed that the arrangements for the purchase made by Valdez one week prior to January 25 were with Carranza, not with defendant. The State argues that defendant was not chargeable with knowledge of the earlier application for the purchase. Defendant responds that the statute does not require that the request be made in person to the one who delivers the weapon. We agree with this interpretation because criminal statutes must be construed strictly in favor of the accused. *People v. Chandler* (1989), 129 Ill. 2d 233, 254.

The evidence showed that the officers and Carranza met at the tavern on January 25, for a few minutes. They then went to Carranza's house, where defendant was waiting. The four then proceeded to defendant's home to get the rifle. Carranza handled the negotiations and accepted the cash. Defendant gave Carranza $50 out of the $350 Valdez paid for the rifle.

It is evident from Valdez's testimony that Carranza was acting as defendant's agent. (See *Clapp v. JMK/Skewer, Inc.* (1985), 137 Ill. App. 3d 469, 472 (an agent is one who acts under authority

from another to transact business for him).) The law considers the acts of an agent to be those of the principal. (*Braught v. Board of Education of Mount Prospect Public School District No. 57* (1985), 136 Ill. App. 3d 486, 489.) Valdez, in effect, requested to purchase the rifle from defendant one week prior to the delivery date.

■ Even if Carranza was not defendant's "agent," the exact time when defendant learned of the previous request for the purchase is immaterial, so long as defendant knew that the request was made more than 24 hours before the time that he delivered the rifle. The wording of the statute is such that there must be a request for the purchase, but the statute does not mandate that the person delivering the rifle have knowledge 24 hours in advance that the request had been made 24 hours prior to the time of the delivery. (See Ill. Rev. Stat. 1989, ch. 38, par. 24—3(g).) The burden was on the State to prove that defendant did not know that the original request for the purchase of the rifle was made more than 24 hours prior to the time of delivery. This the State failed to demonstrate. The evidence showed that Valdez made arrangements for the purchase of the rifle one week prior to the delivery, and the State did not establish that defendant was unaware of that fact. We therefore conclude that the application for purchase of the rifle was made more than 24 hours prior to its delivery.

The State argues that, even if Carranza was acting in defendant's behalf, the arrangement to purchase a rifle one week prior to January 25 could not constitute an "application" because there is no evidence they made arrangements for the purchase of a particular weapon. This argument is based on the assumption that the statute requires a request to purchase the exact weapon. It must be remembered that criminal statutes are to be construed in favor of the defendant (*Chandler*, 129 Ill. 2d at 254) and that the legislature did not intend absurdity, inconvenience or injustice (*Steppan*, 105 Ill. 2d at 316).

■ ■ The statute applies to retail sellers of firearms as well as individuals. (See Ill. Rev. Stat. 1989, ch. 38, pars. 24—3(g), 2—15.) It would be illogical to require a firearm dealer to set aside the exact gun a customer chooses to purchase until the waiting period has ended, when the dealer may have many guns of the same type in stock. Furthermore, under the State's interpretation, a retailer would not be able to take an order for a firearm which was one of a number of identical weapons in a shipment that had not arrived at the store. The most logical interpretation of the statute is that a person must state a request to purchase a type of firearm, not a

particular gun, and then must return either 72 or 24 hours later, depending on what type of firearm he or she intends to purchase. (See Ill. Rev. Stat. 1989, ch. 38, par. 24—3(g).) Under this construction of the statute, the agreement to meet the following week to close the deal constitutes an application to purchase the rifle. Since this application was made more than 24 hours prior to delivery of the rifle, the State failed to prove defendant's guilt beyond a reasonable doubt.

Due to our conclusion that defendant's conviction must be reversed, we need not address defendant's remaining appellate contention.

The judgment of the circuit court is reversed.

Reversed.

GEIGER and McLAREN, JJ., concur.