THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RETHA JOHNSON, Defendant-Appellant.

Second District    No. 2—89—1372

Opinion filed July 10, 1992.

G. Joseph Weller and Beth Katz, both of State Appellate Defender's Office, of Elgin, Kathleen T. Zellner, of Kathleen T. Zellner & Associates, of Naperville, and James P. Palermini, of Huck, Bouma, Martin & Charlton, of Glen Ellyn, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and Joseph Ciaccio, of Springfield (William L. Browers, John X. Breslin, and Norbert J. Goetten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Retha Johnson, appeals her conviction and sentence for abuse of a long-term care facility resident (Ill. Rev. Stat. 1987, ch. 38, par. 12—19(a)). She contends on appeal that (1) she was not proved guilty beyond a reasonable doubt where the evidence did not establish that an actual physical injury occurred; (2) count III charging abuse should have been dismissed because (a) it did not sufficiently set forth the nature and elements of the offense, (b) it improperly joined several distinct offenses in a single count, and (c) section 12—19 of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 12—19(a)) is unconstitutional.

The defendant was charged by indictment on July 7, 1989, in the circuit court of Lake County, with seven counts of aggravated battery,

two counts of intimidation, and one count of abuse of a long-term care facility resident.

Prior to trial, the defendant filed several motions to dismiss, including a motion to dismiss count III of the indictment charging abuse of a long-term care facility resident on the ground that it did not set forth the nature and elements of the offense charged with sufficient specificity and on the ground that section 12—19 of the Code, which proscribed such abuse, is unconstitutional. The circuit court denied the defendant's motions and the State was permitted, over the defendant's objections, to amend count III of the indictment by deleting one of the victims' names and replacing the conjunctive "and," which linked the victims' names, with the disjunctive "or." On the State's motion, count IV of the indictment was nol-prossed.

Following a bench trial, the defendant was convicted of two counts of aggravated battery (Cyrus Cranor and Ben August) and one count of abuse of a long-term care facility resident (Cyrus Cranor and Ben August). She was acquitted of counts VI through X of the indictment. The defendant was sentenced to 30 months' probation, including one year's intensive probation, on her conviction for abuse of a long-term care facility resident.

Winchester House is a facility operated by Lake County in Libertyville. Winchester House provides skilled and intermediate long-term care for its 359 elderly and chronically ill residents. Many of the residents are either physically or mentally unable to care for themselves, and nurses' aides employed by Winchester House help feed them, clean them, toilet them, change their clothes and put them to bed at night. Some of the residents are difficult to work with and resist the aides' efforts in performing those tasks.

The defendant, Retha Johnson, was employed at Winchester House as a certified nurse's aide from June 23, 1986, until February 7, 1989, when she was discharged as a result of alleged incidents of abuse involving eight of the residents. There was testimony during the bench trial concerning seven of these residents. (The State deleted one resident's name prior to trial.) Inasmuch as the defendant was acquitted of the charges relating to most of those residents, however, the following facts relate only to the offenses of which she was convicted.

Cyrus Cranor, an elderly resident of Winchester House, was a difficult patient whose mind "came and went." He frequently verbalized his hatred for black people and often hurled racial slurs at the (female) defendant such as, "You black son of a bitch." Sometimes, while

the defendant was giving care to Cranor, he would strike out at her and try to hit her with his fist or scratch her or try to bite her.

Philip Buchanan, a senior nurse's aide and close friend of the defendant's, testified that the defendant would sometimes lose her temper and swear at Cranor. He observed the defendant hold Cranor's arms and slap his face on several unspecified occasions. Buchanan observed scratches on Cranor's face one or two times, and he believed that one scratch was caused by the defendant although he did not report it.

Bonnie Jones, another nurse's aide, corroborated both Cranor's racial slurs and the slapping incidents. Jones also testified that she and the defendant were attempting to put Cranor on a "Rollamode" and that Cranor refused to stand up. The defendant then yanked him up, and Cranor bumped his head on a cement wall, and exclaimed " 'Ouch. That hurts.' " Jones also testified that the defendant "would walk by [Cranor] and slap him upside of the head, hit him, just whatever, if he was sitting in a chair."

Diane Mota, a nurse's aide at Winchester House, testified similarly that the defendant had slapped Cranor. She related that Cranor was combative with the nurse's aides, and he often struggled with them by swinging his arms as they tried to put him to bed. Mota testified that on an unspecified occasion, the defendant punched Cranor in the chest and slapped him in the face while trying to put him to bed.

Diane Mota testified that, one day in late December 1989, she brought a sack lunch to work that included jalapeno peppers. The defendant asked Mota for one of the peppers. Mota testified that the defendant then squeezed some juice from the pepper onto a spoon and fed it to Cranor. Mota testified that Cranor's face turned red, his nose started running in reaction to the pepper juice, and he put his hands up over his forehead and tried not to look at the defendant.

Patricya Merchant testified that on an occasion in 1988 she saw the defendant put ground pepper from a paper packet into Cranor's mouth. In response, Cranor spit and thrashed about, called the defendant "nigger," and said, "Cut that out, cut that out." Another nurse's aide, Angela Spiller, saw the defendant place ground pepper in Cranor's mouth, which caused him to spit and gag. Another aide also was present during this incident which occurred in June or July 1987.

Sharmaine Brown testified that the defendant would "clonk" Cranor on the upper side of his head with her finger by snapping the middle finger away from the thumb. Brown testified that Cranor

would call people names such as "nigger" and make comments to them about their being "pretty little black girls." Brown could not remember the date or month in which she observed the defendant "clonk" Cranor but stated that it would occur whenever she worked with the defendant. The "clonking" took place in the bathroom "when we would be pottying the patients and stuff." Brown testified she often observed the defendant slap Cyrus Cranor "upside of the head" while they were in the bathroom. Brown worked in Cranor's unit from 1985 to 1987.

Patricya Merchant testified that she observed the defendant bend Cyrus Cranor's fingers backward toward his wrist. Cranor said, "Ouch. Ouch. Cut that out." Merchant testified about "range-of-motion" therapy which involved bending a patient's fingers into backward and forward positions and from side to side in order to prevent the hands from becoming malformed. Merchant stated that when she observed the defendant bending Cranor's fingers, the defendant's actions were "very similar" to range-of-motion therapy, which therapy was part of the defendant's duties. Merchant stated that when Cranor hollered, the defendant laughed first and then stopped bending his fingers.

Another Winchester House employee, Patricia Sikula, testified that in January 1989 the defendant verbally abused Cyrus Cranor and twisted his nose while they were in the bathroom. At the time, Cranor was saying to the defendant, " 'Your face is black, girl, your face is black. What are you going to do to me? What are you going to do?' [The defendant] said, 'I'm going to kill you. I'm going to kill you,' and twisted his nose like that, (indicating)." Sikula reported these incidents to the nurse and the senior nurse's aide.

Ben August, the other Winchester House resident whom defendant was accused and convicted of abusing, was described by Diane Mota as an elderly man who was "halfway blind" and had no legs but good use of his arms. Patricia Sikula stated that Ben August had both legs amputated right below the knees and that he is blind. She described him as very old and "down below he's sore, and when you touch him there, it's just painful." She stated Ben August is generally cooperative if you take the time to explain to him what you are doing before you do it. Bonnie Jones testified that on February 2, 1989, while in the same room with the defendant, she observed defendant and Pat Sikula working on Ben August. She heard a slap, and Pat later told her that the defendant slapped Ben August.

Diane Mota testified similarly that you have to tell Ben August what you are going to do before you do it so that you do not agitate

him. On one occasion, she observed the defendant, without telling Ben August anything, begin to work on him. He became combative, "just swinging, you know, trying to hit her." The defendant grabbed both of his hands, crossed his arms so that his closed fists rested on each of his shoulders, and said "if you don't knock it off I'm going to break your fucking arms off."

The defendant took the stand in her own defense, admitting during her testimony that she might have slapped Ben August using her right hand on his right cheek. She was not questioned concerning Cyrus Cranor, who was deceased at the time of trial.

The trial judge found the defendant guilty of counts I and V, the aggravated batteries of Cyrus Cranor and Ben August, respectively, and of count III, abuse of a long-term care facility resident as to Cyrus Cranor and Ben August. She was acquitted of all other remaining counts. On the State's motion, which was based on the one-act, one-crime principle, sentence was imposed only on count III of the indictment for abuse.

The defendant first argues she was not proved guilty beyond a reasonable doubt of abuse of a long-term care facility resident because the "physical" injury included in the definition of "abuse" in section 12—19 of the Code requires more than the "bodily harm" required for the aggravated battery of an individual 60 years of age or older (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(10)). She contends there must be an actual, visible physical injury, and because the State relied solely upon allegations of physical injury, as opposed to the mental injury or sexual offenses as otherwise provided for in the abuse statute, it was required to prove such injuries. In light of the court's comment prior to sentencing that "[t]here were no injuries," the defendant concludes the court erred in finding her guilty of abuse of a long-term care facility resident by means of physical injury. Further assuming, *arguendo*, that physical injury and bodily harm could be considered to be functional equivalents, she proceeds to argue that the evidence not only failed to establish physical injury but also did not establish the occurrence of even bodily harm to either Cyrus Cranor or Ben August. Consequently, she requests that this court also reverse her convictions of aggravated battery.

The State argues that both the "bodily harm" required under the aggravated battery statute and the "physical injury" required under the abuse statute are satisfied by evidence of pain, and a showing of visible injury is not required. Noting that the striking of a mentally ill person and the excessive use of force to effectuate restraint of such a person are both included in the definition of "abuse" under the Pro-

tection and Advocacy for Mentally Ill Persons Act (Ill. Rev. Stat. 1991, ch. 91½, par. 1352), the State contends there is no rational reason to interpret the abuse of a long-term care facility resident any differently. The defendant has not filed a reply brief.

Defendant's argument here presents in part an attack on her convictions of the aggravated batteries of Cyrus Cranor and Ben August. No sentences were imposed for those convictions, however, and they are not appealable. (*People v. Caballero* (1984), 102 Ill. 2d 23, 51-52; *People v. McKendrick* (1985), 138 Ill. App. 3d 1018, 1028.) This court's focus on review, therefore, is simply on whether the defendant was proved guilty beyond a reasonable doubt of the offense of abuse of a long-term care facility resident.

■ Section 12—19 of the Code provides that "[a]ny person *** who abuses a long term care facility resident is guilty of a Class 3 felony." (Ill. Rev. Stat. 1991, ch. 38, par. 12—19(a).) "Abuse" is defined as follows:

> " 'Abuse' means intentionally or knowingly causing any *physical or mental injury* or committing any sexual offense set forth in this Code." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 38, par. 12—19(d)(1).

The phrase "physical or mental injury" has not previously been interpreted in the context of this statute. The amended indictment for abuse here charged the defendant "knowingly abused Cyrus Cranor, Goldie McEwen, Ben August, Rachael Martinez, Matthew Koch, Dessie Mattei or Lillian Grosso *** in violation of section 12—19(a)." The acts of abuse underlying the charge as to each resident were contained in separate indictments for aggravated battery against each of the respective residents. As to Cranor, it was alleged the defendant "slapped him with her hands, twisted his fingers, twisted his nose, and put pepper in his mouth." As to Ben August, it was alleged the defendant "repeatedly slapped him and twisted his arms."

"Abuse" is defined in the alternative in the statute as being comprised of either physical or mental injury which is intentionally or, as here, knowingly caused. "A person knows, or acts knowingly or with knowledge of *** (b) [t]he result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct." (Ill. Rev. Stat. 1991, ch. 38, par. 4—5.) The abuse indictment here did not specify which type of injury—physical or mental—the defendant's conduct caused, but the record shows the State elected to proceed on the theory that the defendant's actions caused physical injury. Consequently, our review of the sufficiency of the evidence proceeds in accord with

that theory only. *Cf. United States ex rel. Potts v. Chrans* (N.D. Ill. 1988), 700 F. Supp. 1505 (criminal conviction should not be affirmed on the basis of a theory not presented to the trier of fact).

On review, this court is not to substitute its judgment for the trier of fact's but is to review the evidence and all reasonable inferences drawn therefrom in the light most favorable to the prosecution and reverse the judgment only if no rational trier of fact would have found the defendant guilty of the crime charged beyond a reasonable doubt. (*People v. Hurtado* (1991), 208 Ill. App. 3d 110; *People v. Watkins* (1990), 206 Ill. App. 3d 228; *United States v. Atterson* (7th Cir. 1991), 926 F.2d 649.) Moreover, this court's review is of the trial court's judgment, not its reasoning; the trial court's judgment may be sustained for any appropriate reason regardless of whether the trial court relied on those grounds and regardless of whether the trial court's reasoning was correct. *People v. Morgan* (1991), 142 Ill. 2d 410; *People v. Stoudt* (1990), 198 Ill. App. 3d 124.

At the conclusion of trial, the court found that, as to the aggravated batteries of Cyrus Cranor and Ben August—both of which required proof of "bodily harm" (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(10)) as opposed to only "physical contact of an insulting or provoking nature," which also can constitute simple battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—3(a)(2))—the slaps to Cyrus Cranor and Ben August were "injurious" and were sufficient to establish defendant's guilt of the offense of aggravated battery beyond a reasonable doubt. The slaps to Cyrus Cranor and Ben August were also considered by the court in finding the defendant guilty of abuse as to those two men. Subsequently, prior to sentencing the defendant for abuse, however, the court stated: "There are no injuries, although dispicable [*sic*] behavior."

In its law-making function, the legislature has the power to define the terms used in a statute in any reasonable manner (*Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 102 Ill. 2d 443; *Town of Libertyville v. Blecka* (1989), 180 Ill. App. 3d 677) and may broaden or narrow the meaning the term otherwise would have (*People v. Burmeister* (1986), 147 Ill. App. 3d 218). Definitions of terms within a legislative enactment will be sustained to the exclusion of hypothetical indulgences. (*Kirchgessner v. County of Tazewell* (1987), 162 Ill. App. 3d 510.) Definitions themselves are often not clear, however, and may be subject to interpretation. (2A N. Singer, Sutherland on Statutory Construction §47.07, at 133 (Sands 4th ed. 1984).) Terms not otherwise defined will be given their ordinary and popular meaning (*Union Electric Co. v. Department of Revenue* (1990), 136 Ill. 2d

385; *People v. Hurtado* (1991), 208 Ill. App. 3d 110). The words of a statute must be read in light of the purpose to be served by the enactment (*Munroe v. Brower Realty & Management Co.* (1990), 206 Ill. App. 3d 699); consequences resulting from various constructions of the statute must be taken into consideration, and the court should select a construction which leads to a logical result and avoid one which the legislature could not have contemplated. *Klier v. Siegel* (1990), 200 Ill. App. 3d 121.

The ordinary meaning of "abuse" includes "mistreatment; injury," and the word "injury" includes the meaning "physical harm or damage to a person" or "an injurious act" such as "an offense against a person's feelings, dignity, etc." (Webster's New World Dictionary 6, 725 (1972).) "Harm" is defined in part as "hurt" which definition, in turn, includes "the sensation of pain." Webster's New World Dictionary 638, 686 (1972).

At trial, drawing an analogy between the home invasion statute (Ill. Rev. Stat. 1991, ch. 38, par. 12—11(a)(2)), which is designed to protect people while in a dwelling place, and the instant abuse statute, which is designed to protect residents of long-term care facilities, the State looked to cases interpreting the "injury" requirement of the home invasion statute in support of its argument that the physical "injury" contemplated in the abuse statute need not be visible in order to be considered an injury. (See, *e.g., People v. Foster* (1982), 103 Ill. App. 3d 372 (clear injury shown where the defendant pushed victim down into a chair with his hand around her throat while she struggled with him); *People v. Shelby* (1984), 123 Ill. App. 3d 153 (physical pain suffered by the victim during her swinging-kicking-screaming struggle with the defendant to remove his hand from her mouth showed the required injury); *People v. Rachel* (1984), 123 Ill. App. 3d 600 (where the defendant held a pillow over a child's face preventing her from breathing properly, the lack of visible injury does not negate "injury" to her); *People v. Geitz* (1985), 138 Ill. App. 3d 670 (essential element of injury shown where victim was forced to pull pillowcase over her head, to urinate in a cup and drink from the cup, to drink water from the toilet, to lick the anus of a three-year-old child, and to have the defendant place his penis into her mouth and ejaculate).) The "injury" required under the home invasion statute has also been determined to include psychological trauma as well. (*People v. Ehrich* (1988), 165 Ill. App. 3d 1060, 1072 (as opposed to the terms "physical injury," "physical harm" or "bodily harm" in the statutes, broader term "injury" in home invasion statute obviously intended to encompass psychological trauma caused to seven-year-old girl after in-

vader placed his hand over her mouth and restrained her in her bedroom).) In contrast to the undefined term "injury" in the home invasion statute, the "abuse" defined in the instant statute specifically includes "injury" that is either "physical" *or* "mental" thereby relieving any doubt about the types of injurious consequences of abuse meant to be proscribed.

Here, the State finds support for its argument that the injury sustained from the defendant's slaps constitutes physical injury and, thus, abuse, in the definition of "abuse" in section 2 of the Protection and Advocacy for Mentally Ill Persons Act, to wit:

> " 'Abuse' means any act or failure to act by an employee of a facility rendering care or treatment, which act or failure was performed knowingly, recklessly or with intentional disregard for the rights of a mentally ill person, and which caused, or may have caused, injury to a mentally ill person, and includes but is not limited to acts such as: (1) the rape or sexual assault of a mentally ill person; (2) *the striking of a mentally ill person*; (3) the use of excessive force when placing a mentally ill person in bodily restraints; and (4) the use of bodily or chemical restraints on a mentally ill person which is not in compliance with federal 'and State laws and regulations." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 91½, par. 1352(2).

"Abuse" is defined similarly to the act at issue here in several other statutes, such as in section 1—101.1 of the Mental Health and Developmental Disabilities Code, as "any physical injury, sexual abuse, or mental injury inflicted on a recipient of services other than by accidental means" (Ill. Rev. Stat. 1991, ch. 91½, par. 1—101.1); see also the Abused and Neglected Long Term Care Facility Residents Reporting Act (Ill. Rev. Stat. 1991, ch. 111½, par. 4163(d)) and the Nursing Home Care Reform Act of 1979 (Ill. Rev. Stat. 1991, ch. 111½, par. 4151—103). The requirement of "physical or mental injury" under the Nursing Home Care Reform Act was satisfied where an employee of the plaintiff school dragged a resident on a concrete surface for approximately 10 feet causing abrasions to the resident's back. See *Grove School v. Department of Public Health* (1987), 160 Ill. App. 3d 937, 940.

▇ It is evident that by these various acts the legislature has undertaken to protect persons who are particularly vulnerable—the mentally and physically infirm and the aged—from three types of abuse: physical, mental and sexual. We do not believe that by enacting the statute at bar the legislature could possibly have intended that the intentional or knowing striking of a long-term care facility resident

would constitute abuse only if the striking caused an actual, visible injury.

The cases cited by the defendant in support of her argument that the slapping was insufficient to cause even the "bodily harm" required in the aggravated battery statute, much less physical injury, are not persuasive. In *People v. Benhoff* (1977), 51 Ill. App. 3d 651, the defendant suddenly hit the police officer in the face with a fist and grabbed at the steering wheel while they were en route to the county jail. The officer affirmatively testified that he did not require hospitalization, suffer "any cuts or bruises," "serious injuries," or "any injuries at all." The court concluded that no conviction of aggravated battery could be sustained. In *People v. Veile* (1982), 109 Ill. App. 3d 847, no bodily harm and, thus, no aggravated battery was found to have been committed where the defendant struck a police officer in the chest with her right fist. The officer, who was wearing soft body armor at the time, testified he was "jolted back" a little, but his uncontradicted testimony was that he was not injured by the blow. Finally, in *People v. McBrien* (1986), 144 Ill. App. 3d 489, the prosecution failed to establish beyond a reasonable doubt that the defendant committed aggravated battery where the officer on whose forehead and arm the defendant sprayed a liquid (mace) testified he felt only a "tingling" sensation, but no pain.

In distinguishing batteries caused by contact of an insulting or provoking nature and those causing bodily harm, the court in *People v. Mays* (1982), 91 Ill. 2d 251, 256, found the latter required "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent."

It is clear there was affirmative testimony in each of the above cases as to the absence of injury or pain and, thus, no aggravated battery was proved. Arguably, the officer in *Benhoff* experienced pain upon being struck in the face with the defendant's fist; he was not questioned about whether he experienced pain, however, and the case was decided before *Mays*. Two other pre-*Mays* cases found the requisite bodily harm had been caused despite any direct evidence at trial of visible injury. *People v. Tripp* (1978), 61 Ill. App. 3d 507, 510 (defendant struck correctional officer in the face with a fist and struck him several times in the side with a stapler); *People v. Taylor* (1977), 53 Ill. App. 3d 810, 816 (defendant kicked police officer in groin and head areas).

Here, Cyrus Cranor was deceased at the time of trial, and Ben August did not testify. Despite the fact the scratches observed on Cranor's face were not specifically tied to the defendant's actions,

and, drawing all reasonable inferences in the prosecution's favor, the court nevertheless reasonably could have concluded that these two elderly men felt pain when slapped by the defendant. Cranor was slapped in the face and also was "punched" in the chest by the defendant; August was slapped on at least one occasion with enough force to allow Bonnie Jones to hear it in another part of the same room. Thus, we do not construe the court's comment that "[t]here were no injuries, although dispicable [sic] behavior" to preclude its finding of abuse but, rather, view it as simply an acknowledgment that there were no visible, permanent injuries. Notwithstanding the likely indignity also caused these two men by the defendant's opprobrious behavior, the physical pain, however transitory, suffered by them cuts cleanly into the body of "physical injury" circumscribed within the Act's definition of abuse.

We conclude that defendant's guilt of the offense of abuse of a long-term care facility resident was proved beyond a reasonable doubt and no reversal is warranted.

The defendant's next contention is that count III of the indictment, which charged the abuse offense, was insufficient to charge an offense in that it alleged no specific act of abuse, listed eight potential victims (until amended when one victim's name was stricken) and did not sufficiently specify a date on which any act occurred. The State argues the indictment was specific enough to enable the defendant to prepare a defense and bar any future prosecutions where any elements missing from count III were supplied by the other counts of the indictment, which must be read as a whole, and that the dates in the indictment need only show that the offense charged was committed within the statute of limitations period and prior to the indictment.

The State correctly notes the well-established rule in Illinois that, in testing the sufficiency of a multicount indictment, elements missing from one count may be supplied by another count. (*People v. Morris* (1990), 135 Ill. 2d 540, 544; *People v. Hall* (1982), 96 Ill. 2d 315, 320; *People v. Dworzanski* (1991), 220 Ill. App. 3d 185, 196.) It also correctly argues that it need only establish that the offense charged was committed within the statute of limitations period and prior to the return of the indictment. (*People v. Barlow* (1989), 188 Ill. App. 3d 393, 402.) The correct standard on review, however, where the defendant has challenged the sufficiency of the indictment at trial, as defendant did here, is whether—considering only the indictment itself (*People v. Rose* (1976), 44 Ill. App. 3d 333)—it states the nature of the offense

and adequately sets forth each element of that offense. *People v. Young* (1991), 220 Ill. App. 3d 488.

■ The essence of the defendant's claim with regard to this issue is that count III failed to specify whether the abuse was committed by physical or mental injury or by sexual offense. Reference to the other counts of the multicount indictment, however, clearly apprised the defendant that she was being charged with abuse causing physical injury. Separate counts for aggravated battery relating to each of the seven victims listed in the amended abuse indictment described a physical act or acts of the defendant upon the body of each of the victims. Consequently, the court did not err in denying her motion to dismiss count III on the ground that it did not state an offense.

The defendant's next contention is that the court erred in denying her post-trial motion to dismiss count III of the indictment because it was duplicitous in that it improperly joined several distinct offenses in a single count. The defendant refers here to the fact that count III charges abuse against seven separate victims.

■ "Duplicity" occurs when two or more offenses are charged in the same count, not from charging a single offense in more than one way or where different acts contribute to the same offense. (*People v. Ross* (1961), 21 Ill. 2d 419; *People v. Simmons* (1982), 105 Ill. App. 3d 402.) Duplicity "is unacceptable because it prevents the jury from deciding guilt or innocence on each offense separately and may make it difficult to determine whether the conviction rested on only one of the offenses or both." (2 W. LaFave & J. Israel, Criminal Procedure §19.2, at 457 (1984).) Assuming, *arguendo*, that count III was duplicitous, improper joinder of offenses nevertheless may be waived (*People v. Collins* (1991), 214 Ill. App. 3d 98; *People v. McKendrick* (1985), 138 Ill. App. 3d 1018), such as where the issue is not raised until after the court has made its finding. See 2 W. LaFave & J. Israel, Criminal Procedure §19.2, at 457 (1984).

The defendant here did not raise the issue of the duplicity of count III until after the court had found her guilty of the abuse of Cyrus Cranor and Ben August and she filed her post-trial motion. Under these circumstances, we find the defendant waived the issue.

■ The defendant's final contention is that section 12—19 of the Code is unconstitutionally vague because the term "mental injury" is not defined and, therefore, the statute inadequately specifies the conduct it proscribes and fails to provide an ascertainable standard for its enforcement.

The due process requirement of the United States and Illinois Constitutions that the proscriptions of a penal statute must be clearly

defined (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) assures that an individual cannot be held to have violated a statute unless the individual could reasonably have been expected to understand that the particular conduct was proscribed (*Bouie v. City of Columbia* (1964), 378 U.S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697; *People v. Garrison* (1980), 82 Ill. 2d 444, 454). Where first amendment freedoms are not involved, the determination of whether a particular statute is void for vagueness is made with reference to the factual context of each case (*People v. Haywood* (1987), 118 Ill. 2d 263, 270), as opposed to hypothetical situations (*People v. Vandiver* (1971), 51 Ill. 2d 525, 529), since a defendant may be prosecuted under a statute without violating due process rights if his or her conduct clearly falls within the statutory proscription even though the statute may be vague as to other conduct. (*Garrison*, 82 Ill. 2d at 454.) Therefore, in order to sustain a facial challenge to the statute, the challenger " 'must demonstrate that the law is impermissibly vague in all of its applications.' " *People v. Taylor* (1990), 138 Ill. 2d 204, 211-12, quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 497, 71 L. Ed. 2d 362, 371, 102 S. Ct. 1186, 1193; *Haywood*, 118 Ill. 2d at 270.

The defendant here was not prosecuted for conduct causing "mental injury" but, rather, for conduct falling squarely within the proscription against abuse of a long-term care facility resident by causing "physical injury." As such, defendant's due process rights were not offended, and we need not further address her contention concerning the unconstitutional vagueness of the statute.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and McLAREN, JJ., concur.