2026 IL App (2d) 250472-U
No. 2-25-0472
Order filed June 12, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

PEDRO GUZMAN, Defendant-Appellant

Appeal from the Circuit Court of De Kalb County.
Honorable Marcy L. Buick, Judge, Presiding.
No. 20-CF-255

JUSTICE MULLEN delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Pattern jury instructions on the issues in a criminal sexual assault prosecution and the defense of consent were proper, and trial counsel did not render ineffective assistance by failing to object to instructions; defendant forfeited challenge to the sufficiency of the evidence by failing to advance an argument conforming to rule governing the contents of appellate briefs.

¶ 2    Following a jury trial in the circuit court of De Kalb County, defendant, Pedro Guzman, was found guilty of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2018)) and was sentenced to a 12-year prison term. Defendant argues on appeal that: (1) the jury was not properly instructed; (2) by failing to object to the improper instructions, trial counsel rendered ineffective assistance; and (3) the State failed to prove defendant's guilt beyond a reasonable doubt. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    D.B. testified that she lived in Mexico. In August 2019, D.B., who was then 18 years old, visited defendant and his family as a houseguest. Defendant was married to defendant's great aunt, Anna. Their daughter Vanessa was roughly D.B.'s age. D.B. stayed in Vanessa's room during her visit. On October 19, 2019, the family held a pre-Halloween party. Everyone in attendance was drinking except Anna. D.B. drank beer, wine, and vodka. Vanessa was intoxicated. When the party ended, defendant took Vanessa, who had fallen asleep, into her bedroom. Defendant told D.B. to sleep in a different room.

¶ 5    After falling asleep, the next thing D.B. remembered was waking up on the floor with defendant on top of her. Defendant's tongue was in D.B.'s vagina. D.B. tried to push defendant with her legs. Defendant then grabbed D.B.'s wrists and held her arms over her head and penetrated her vagina with his penis. Asked if she was "able to do anything," D.B. responded, "I did not have the strength." She clarified that she "was still drunk and *** did not know what to do." After about 15 minutes, she pushed him with her knees. D.B. testified that when she did so, defendant "noticed that [she] was more conscious, so he left" D.B. locked herself in the bathroom and cried for about an hour before going back to bed. When she woke up, she told Vanessa what defendant had done. Vanessa summoned defendant and Anna. According to D.B., "all three of them came close to [her] asking why [she] was saying that, that maybe it was a dream." Vanessa offered to take D.B. to a gynecologist, but defendant said that she did not need to, because it had just been a dream.

¶ 6    Vanessa took D.B. out for breakfast and they then went shopping. They were away from defendant's home for several hours. D.B. texted her father's wife, asking her to book a ticket for D.B. to return home. Defendant contacted his sister, who spoke to D.B., insisting D.B. had only dreamed that defendant assaulted her.

¶ 7     The next morning, D.B. went to stay with her "aunt" (actually her grandfather's cousin) Marta in Aurora. Marta took D.B. to the Aurora Police Department, where she told two officers what had occurred. She then went to a hospital, where she was examined and a rape kit was performed.

¶ 8     Kevin Chang, an emergency room physician, testified that he performed a sexual assault examination of D.B. in the early morning hours of October 22, 2019. Although he did not observe any signs of trauma, he explained that nonconsensual sexual intercourse would not necessarily produce signs of trauma. Jessica Jones, a nurse, testified that she assisted Chang with the examination. On cross-examination, she testified that she did not recall whether D.B. stated that defendant held her wrists, but her notes from the examination would refresh her memory. After Jones reviewed her notes, defense counsel asked, "Does [D.B.] ever mention her arms being held above her head?" Jones responded, "In that statement, no."

¶ 9     Heather May, a forensic scientist employed by the Illinois State Police, testified that she performed a DNA analysis of a vaginal swab from D.B.'s rape kit. The swab contained DNA from two individuals, one of whom was male. May compared the male DNA from the swab to a DNA sample from defendant and determined that defendant could not be excluded as the source of the DNA found on the vaginal swab. May explained that an individual cannot be excluded as the source of DNA if "all the information in the evidence [DNA] profile is consistent with that person's known DNA profile." She added, "If there was just one piece of information between the known profile and the evidence profile that was inconsistent, then that person would be excluded." According to May, the profile found on the sample from the vaginal swab and the sample of defendant's DNA "would be expected to occur in approximately one in 7.2 decillion unrelated individuals."

¶ 10    Defendant testified that he drank about two beers during the party. By 2 a.m., all the guests had left, and only defendant, Anna, Vanessa, and D.B. remained at the home. Defendant went to sleep, but when he got up to get some water, D.B. hugged him and gave him a kiss. When he asked what was going on, D.B. rubbed his penis through his pajama pants. She then took his hand and led him into her bedroom where they had sexual intercourse. Defendant denied forcing D.B. to have sex with him.

¶ 11                                    II. ANALYSIS

¶ 12    Defendant initially argues that the jury was not properly instructed. The instructions included the pattern issues instruction for criminal sexual assault (Illinois Pattern Jury Instructions, Criminal, No. 11.60 (hereinafter IPI Criminal)), along with an instruction on the defense of consent (IPI Criminal No. 11.63) Defendant argues that these instructions shifted to him the burden of proving his innocence. We note at the outset that "[t]o preserve a jury instruction error for review on appeal, a party must (1) object to a proposed instruction or tender one of his own and (2) raise the issue again in a posttrial motion." *People v. Miller*, 2021 IL App (1st) 190060, ¶ 42. Defendant did not object at trial to the use of IPI Criminal Nos. 11.60 and 11.63, so he forfeited appellate review of the claimed error. Defendant argues, however, that we should consider the issue under the plain-error rule.

¶ 13    As we have observed:

> "The plain-error doctrine, as it has developed in Illinois, allows that, under two circumstances, a forfeited error affecting substantial rights may be reached by a reviewing court. [Citation.] Under the first prong, where the evidence in a case is so closely balanced that the verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error to ensure that an innocent person was not wrongly convicted.

[Citations.] Under the second prong, where the error is so serious that the defendant was denied a substantial right, and thus a fair trial, a reviewing court may consider a forfeited error to preserve the integrity of the judicial process. [Citation.]" *People v. Ryan*, 2024 IL App (2d) 220076, ¶ 21.

Defendant argues that plain-error review is warranted under the first prong. Under either prong of the plain-error rule "[t]he initial analytical step *** is determining whether there was a clear or obvious error at trial." *Id.*, ¶ 22.

¶ 14    Defendant claims that the use of two pattern jury instructions was error. "Although pattern instructions are not themselves law and are open to challenge if they are inaccurate statements of the law, the instructions are mandatory, if applicable and accurate." *People v. Polk*, 407 Ill. App. 3d 80, 108 (2010). Before examining the instructions at issue here, we review the law applicable to the offense that defendant was found guilty of committing. Section 11-1.20(a)(1) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-1.20(a)(1) (West 2018)) provides:

"(a) A person commits criminal sexual assault if that person commits an act of sexual penetration and:

(1) uses force or threat of force"

Section 11-1.70(a) of the Criminal Code (*id.* § 11-1.70(a)) provides, "It shall be a defense to any offense under Section 11-1.20 *** of [the Criminal] Code where force or threat of force is an element of the offense that the victim consented." Proof of the use of force implicitly establishes that the act of sexual penetration was nonconsensual (*People v. Haywood*, 118 Ill. 2d 263, 274 (1987)), so the absence of consent is not a separate element that the State must prove independently. *Id.* "[H]owever, *** if the accused raises a question of the [*sic*] consent, the State

- 5 -

has a burden of proof beyond reasonable doubt on the issue of consent as well as on the issue of force." *Id.*

¶ 15    The challenged pattern jury instructions given here are entirely consistent with these principles. The trial court instructed the jury:

"To sustain the charge of criminal sexual assault the State must prove the following propositions: first proposition, that the defendant committed an act of sexual penetration upon [D.B.]; and second proposition, that the act was committed by the use of force or threat of force; *and third proposition, that* [*D.B.*] *did not consent to the act of sexual penetration.*" (Emphasis added.)

That instruction conforms to Illinois Pattern Jury Instructions, Criminal, No. 11.60 (hereinafter IPI Criminal). The Committee Note accompanying IPI No. 11.60 explains that the third proposition must be included in the instruction "[w]hen force or the threat of force is an element of the offense and the defense of consent is raised by the evidence." The trial court further instructed the jury, in accordance with IPI Criminal No. 11.63, that "[i]t is a defense to the charge of criminal sexual assault that [D.B.] consented." The Committee Note accompanying IPI Criminal No. 11.63 states, "Give this Instruction when the defense of consent is raised in offenses where proof of force or threat of force is an element [of criminal sexual assault]." That was the case here.

¶ 16    Defendant's brief asserts that these pattern instructions, which accurately state the law, nonetheless "cause[] jury confusion, result[] in improper burden shifting, and misstate[] the law as applied to this case." In digressive fashion, the brief continues with a reference to the prosecution's opening statement, in which the prosecutor said, "as you listen to the evidence in this case ***, see if you can find any credible evidence that an 18-year-old girl would want to have sex with her grandmother's brother-in law." That statement (to which defendant's attorney did not object) does

not support defendant's argument that the jury was improperly instructed and defendant has cited no authority that it would. Thus, defendant has not established any error with respect to the instructions, let alone a clear or obvious error.

¶ 17 Alternatively, defendant argues that he was deprived of the effective assistance of counsel at trial due to trial counsel's failure to object to the challenged instructions. Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), which requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Because the instructions in question were proper, it was reasonable not to object to them. Moreover, an objection could not have changed the outcome of the proceeding. Thus, defendant has shown neither deficient performance nor prejudice.

¶ 18 Finally, defendant contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt. The following principles govern our review:

"When, as here, a criminal defendant challenges the sufficiency of the evidence that resulted in his conviction, our function is not to retry the defendant. [Citation.] Rather, 'after viewing the evidence in the light most favorable to the prosecution,' we must determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) [Citation.] We will not overturn a criminal conviction on review 'unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.' [Citation.] *** [I]t has been clear since our supreme court's decision in [*People v. Schott*, 145 Ill. 2d 188 (1991)], that the State has no added burden in a sexual assault case to demonstrate that the complainant's

testimony is either substantially corroborated or strong enough to meet a clear and convincing evidentiary burden; like any other criminal case, the State need only prove the defendant's guilt beyond a reasonable doubt. *People v. Parker*, 2016 IL App (1st) 141597, ¶ 29.

¶ 19 Beyond a brief recitation of reasonable-doubt standard, in his opening brief defendant's entire argument with respect to the sufficiency of the evidence is as follows:

"Here, the State failed to present sufficient evidence to establish beyond a reasonable doubt that defendant possessed the requisite criminal intent for Criminal Sexual Assault, and failed to prove that defendant lacked consent for his encounter with the complaining witness. The only evidence given by the state for lack of consent was the uncorroborated testimony of the complaining witness, and this account was not corroborated by any other witness presented by the state. Therefore, too much weight was afforded to uncorroborated testimony, resulting in an unfair outcome."

¶ 20 The State argues that this statement is insufficient to merit review and should be deemed forfeited. We agree. "A bare contention, unsupported by argument and citation of pertinent authority, does not meet the requirements of [the Illinois Supreme Court Rule governing the contents of appellate briefs] and is grounds for finding an argument forfeited." *People v. Smith*, 2023 IL App (3d) 230060, ¶ 67. Given that there is no requirement that testimony of a victim of a sex offense be corroborated, the bare assertion that "too much weight was afforded to uncorroborated testimony" is particularly inadequate.

¶ 21 Recognizing the possibility that we might choose to overlook defendant's forfeiture, the State alternatively addressed the merits of defendant's challenge to the sufficiency of the evidence. In his reply brief, defendant has substantially augmented his argument regarding the sufficiency

of the evidence. Illinois Supreme Court Rule 341(j) (eff. Oct. 1, 2020), which is applicable in both civil and criminal appeals (Ill. S. Ct. R. 612(b)(9) (eff. July 1, 2017)) provides, "The reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee." Because we see no reason to overlook defendant's forfeiture of the issue of the sufficiency of the evidence, we need not consider either the State's argument on the merits or defendant's reply to the State's argument. Forfeiture aside, there is sufficient evidence to support the jury's verdict that defendant committed criminal sexual assault. The jury could choose to disbelieve his testimony that he was propositioned by J.B. in the middle of the night, and instead credit her testimony that she awoke to the assault, which she was unable to fend off.

¶ 22                                    III. CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 24    Affirmed.